STATE OF NORTH CAROLINA v. BILLY HONEYCUTT

No. 53

(Filed 10 April 1974)

1. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— exclusion of jurors opposed to capital punishment**

There is no merit in defendant's contention that a juror cannot be excused under any circumstances because of his convictions concerning capital punishment, it being well established that in a capital case a juror may be properly challenged for cause if he indicates he could not return a verdict of guilty knowing the penalty would be death even though the State proved to him by the evidence and beyond a reasonable doubt that the accused was guilty of the capital crime charged.

2. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— exclusion of jurors opposed to capital punishment — representative jury**

The exclusion of jurors opposed to capital punishment does not result in an unrepresentative jury which is weighted toward conviction.

3. **Constitutional Law § 29; Criminal Law § 135; Jury § 5— voir dire in capital case**

There is no merit in defendant's contention that in capital cases there should be no *voir dire* examination of prospective jurors.

4. **Constitutional Law § 36; Criminal Law § 135— constitutionality of death penalty**

The death penalty does not constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

Chief Justice BOBBITT and Justices HIGGINS and SHARP dissenting as to death sentence.

APPEAL by defendant from *Tillery, J.,* 1 October 1973 session of DUPLIN Superior Court. Defendant was charged in a bill of indictment, proper in form, with the first degree murder of Brenda Honeycutt. He entered a plea of not guilty.

The State offered evidence which tended to show the following: Prior to 6 June 1973, defendant, his wife Brenda Honeycutt and their nine year old daughter, Billie Jean Honeycutt, had lived in a trailer rented from J. D. Sheppard which was located about 200 feet from Mr. Sheppard's dwelling. On the date of Brenda Honeycutt's death, defendant and his family had been separated for about three weeks, and Brenda and Billie Jean had continued to live in the trailer. Shortly after midnight on the morning of 6 June 1973, Mr. Richard Rouse, at defend-

ant's request, carried defendant to the trailer occupied by his wife and child. Mr. Rouse told Brenda Honeycutt that he had brought her husband to talk with her, and she responded "All right." Mr. Rouse then departed.

Defendant's daughter testified that when defendant came into the trailer on the morning of 6 June 1973, he immediately started to call her mother ugly names and among other things told her, "If I can't have you, no man can." Following a prolonged argument defendant took a butcher knife from his pants and stabbed her mother as she walked down the hall of the trailer. Her mother then told her to go out and get help. Billie Jean went to the Sheppard home and told them what had happened. She further testified that her mother had no gun or knife.

J. D. Sheppard stated that he was awakened by Billie Jean Honeycutt some time after midnight, and after talking with her he immediately called the Sheriff's Department. Later defendant came into his house and stated that he had stabbed his wife several times and he thought that she was dead. Billy Honeycutt appeared to be sober at that time.

Deputy Sheriff E. E. Proctor, of the Duplin County Sheriff's Department, testified that pursuant to a telephone call which he received at about 12:45 a.m. on 6 June he went to the trailer occupied by Brenda Honeycutt. He found her body lying on the floor of the trailer in a pool of blood. He found defendant on the premises and advised him of his rights. Defendant then asked if his wife were dead, and upon being told that she was dead, the defendant said: "Ha, I'm damn glad of it."

Dr. Frank W. Avery, an expert in pathology, stated that he performed an autopsy on the body of Brenda Honeycutt on 7 June 1973. There were five stab wounds on the trunk of her body, three being in front and two in the back. One of the wounds pierced her chest and passed through her right lung causing a hemorrhage which, in his opinion, was the proximate cause of her death.

There was other testimony to the effect that after his separation from his family, defendant had on at least three occasions told persons that he was going to kill his wife.

At the close of the State's evidence defendant moved for a directed verdict of not guilty. The motion was denied.

Defendant, testifying in his own behalf, stated that he and his wife had been separated for about three weeks before the date of her death. He left home to try to get a better job. During the night of 5 June 1973 and the early morning hours of 6 June 1973, he had been drinking beer and liquor. He was worried because he was separated from his family. He went to the trailer in the early morning hours of 6 June to talk to his wife and to make her see how much he loved her. He was not angry when he arrived at the trailer and he did not feel the liquor that he had consumed. Upon arrival, his wife told him that she did not intend to ever live with him again, and that she was going to take his children away to make sure that he would not see them again. He further testified that Brenda Honeycutt came out of the kitchen with a knife in her hands, and he struggled with her in an attempt to take the knife from her. He did not remember stabbing his wife, but he did remember seeing her on the floor. He had not planned to hurt his wife although he had, in a joking manner, made statements which might indicate that he intended to kill his wife.

Defendant offered no evidence other than his own testimony.

The jury returned a verdict of guilty of murder in the first degree. Defendant appealed from judgment sentencing him to death.

*Attorney General Robert Morgan by Assistant Attorney General Thomas B. Wood and Associate Attorney Archie W. Anders for the State.*

*Russell J. Lanier, Jr. for defendant appellant.*

BRANCH, Justice.

Defendant by his first assignment of error contends that the jury selection process in this case deprived him of a truly representative and impartial jury as guaranteed by the Sixth Amendment to the United States Constitution.

Defendant seeks to support this assignment of error with several separate arguments.

The record contains only the following statement concerning jury selection:

## "JURY SELECTION

It is stipulated and agreed by counsel for the defendant and the solicitor for the State, that the following questions are true and accurate questions asked by the State in the selection of the jury that tried Billy Honeycutt.

1. Do you have any moral or religious scruples about capital punishment?

2. On account of these moral or religious scruples, would it be impossible, under any circumstances, and in any event, for you to return a verdict of guilty as charged even though the State proves the defendant guilty beyond a reasonable doubt?

3. Would you automatically vote against the imposition of capital punishment without regard to any evidence that might develop at the trial?

4. You would not vote in favor of the death penalty under any circumstances, no matter how aggravated the case was and no matter what the facts were?

It is further stipulated and agreed that no objections were interposed at the time the above questions were asked the jury during the jury selection of this case. It is further stipulated and agreed that the defendant did not exhaust his peremptory challenges to the jury in the jury selection in this case.

EXCEPTION No. 1

That the court erred in allowing the State's challenge for cause of jurors who had conscientious objections to capital punishment and who stated that their objection to capital punishment would not allow them to return a guilty verdict in this case."

This record does not disclose the answers given by any juror. Neither does it reveal that any juror was excused for cause because of his opposition to capital punishment. An appellate court is bound by the record as certified and ordinarily can judicially know only what appears of record. 1 N. C. Index 2d, Appeal and Error § 42.

Our consideration of this assignment of error must therefore be limited to the effect of the inquiries to prospective jurors concerning their views on capital punishment.

[1]   We find no merit in defendant's contention that a juror cannot be excused under any circumstances because of his convictions concerning capital punishment. It is now well established that in a capital case a juror may be properly challenged for cause if he indicates he could not return a verdict of guilty knowing the penalty would be death, even though the State proved to him by the evidence and beyond a reasonable doubt that the accused was guilty of the capital crime charged. *Witherspoon v. Illinois,* 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770, reh. den. 393 U.S. 898, 21 L.Ed. 2d 186, 89 S.Ct. 67; *State v. Washington,* 283 N.C. 175, 195 S.E. 2d 534; *State v. Cook,* 280 N.C. 642, 187 S.E. 2d 104; *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652; *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671; *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487.

[2]   Defendant further contends that excluding veniremen opposed to capital punishment denied him an impartial and representative jury. He argues that polls and studies establish that a large part of contemporary society has some scruples about capital punishment and that employing a jury selection process which excludes such persons does not reflect a "cross section of the community" and is impermissible. He specifically contends that a jury without scrupled jurors is unbalanced or weighted toward conviction.

The United States Supreme Court addressed this same question in *Witherspoon v. Illinois, supra.* There the defendant contended that such a jury, unlike one chosen at random from a cross section of the community, must necessarily be biased in favor of conviction, for the kind of juror who would be unperterbed by the prospect of sending a man to his death is the kind of juror who would too readily ignore the presumption of the defendant's innocence, accept the State's version of the facts and return a verdict of guilty.

After considering surveys cited by defendant in his brief, the Court in Witherspoon said:

"... We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a per se constitutional rule requiring the reversal

of every conviction returned by a jury selected as this one was."

In instant case petitioner presents the same argument without additional evidence or authority. Logic and the weight of authority require that we reject this argument.

[3]   Defendant argues that in capital cases there should be no voir dire examination of prospective jurors.

The purpose of the voir dire examination and the exercise of challenges, either peremptory or for cause, is to eliminate extremes of partiality and to assure both the defendant and the State that the persons chosen to decide the guilt or innocence of the accused will reach that decision solely upon the evidence produced at trial. *Swain v. Alabama,* 380 U.S. 202, 13 L.Ed. 2d 759, 85 S.Ct. 824; *Logan v. United States,* 144 U.S. 263, 36 L.Ed. 429, 12 S.Ct. 617; *State v. Spence,* 274 N.C. 536, 164 S.E. 2d 593.

Defendant's arguments in support of this assignment of error run counter to the well-recognized principle that both the State and the defendant are entitled to a trial by an impartial jury. *Tuberville v. United States,* 303 F. 2d 411, cert. den. 370 U.S. 946, 8 L.Ed. 2d 813, 82 S.Ct. 1607; *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453.

In the recent case of *State v. Crowder,* 285 N.C. 42, 203 S.E. 2d 38, we find the following pertinent statement:

> "In order to insure a fair trial before an unbiased jury, it is entirely proper in a capital case for both the State and the defendant to make appropriate inquiry concerning a prospective juror's moral or religious scruples, beliefs, and attitudes toward capital punishment."

Here, the questions asked the prospective jurors by the Solicitor were permissible under both Federal and State decisions, and were necessary to insure trial by an impartial and representative jury.

This assignment of error is overruled.

Although assigned as error, defendant does not argue in his brief that the Court erred in denying his motion for a directed verdict of not guilty. We think it sufficient to state that the trial judge properly denied defendant's motion since there was

ample, substantial evidence of every essential element of the crime of murder in the first degree to carry the case to the jury.

[4]    Finally, defendant contends that the death penalty constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

This Court has declared that upon conviction any person who commits the crime of burglary in the first degree, first degree murder, arson or rape after 18 January 1973 shall suffer the penalty of death. *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19. We fully considered the constitutionality of the death sentence in light of the Eighth and Fourteenth Amendments to the United States Constitution in the case of *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721, and there reaffirmed the holding of *Waddell.* See also *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750; *State v. Dillard,* 285 N.C. 72, 203 S.E. 2d 6; *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10; *State v. Crowder, supra.* The holdings in *Waddell, Jarrette, Noell, Dillard, Henderson* and *Crowder* control this assignment of error.

This assignment of error is overruled.

Examination of each assignment of error, every argument offered by counsel for defendant and a careful review of the entire record discloses that defendant has received a fair trial, free from prejudicial error.

No error.

Chief Justice BOBBITT, Justice HIGGINS and Justice SHARP dissent as to death sentence and vote to remand for imposition of a sentence of life imprisonment for the reasons stated in the dissenting opinion of Chief Justice Bobbitt in *State v. Jarrette,* 284 N.C. 625, 666, 202 S.E. 2d 721, 747 (1974).