STATE OF NORTH CAROLINA v. ISAAC S. MONK

No. 28

(Filed 4 November 1976)

1. **Jury § 7— jurors opposed to death penalty — challenges for cause properly allowed**

   The trial court in a first degree murder prosecution properly allowed the State's challenges for cause of three jurors who stated that they would not return a verdict under any circumstances knowing that the death penalty would be imposed and that it would be impossible to return a verdict of first degree murder even though the State proved the defendant guilty beyond a reasonable doubt.

2. **Criminal Law § 53— medical expert — abrasions and lacerations on deceased — opinion testimony admissible**

   In a first degree murder prosecution, a witness for the State who was found by the court to be a medical doctor and an expert in the field of pathology was qualified to testify that in his opinion abrasions and lacerations on the face of deceased were due to contact with some form of rough surface or object.

3. **Criminal Law § 57— ballistics expert — no express finding of expertise — testimony properly allowed**

   Though the trial court in a first degree murder prosecution did not expressly find a witness to be an expert in ballistics, the court presumably found him an expert, since it admitted the witness's testimony as to the caliber of the bullet taken from the body of deceased.

4. **Criminal Law § 169— evidence erroneously admitted — similar evidence already before jury — no prejudice**

   Though the trial court in a murder prosecution erred in allowing a witness to testify as to what he had told a third person, such error was not prejudicial to defendant, since practically the same testimony was already before the jury by virtue of the testimony of a witness who had shared a jail cell with defendant and to whom defendant had made an admission.

5. **Criminal Law § 77— statements by defendant to fellow prisoners — findings of fact as to voluntariness not required**

   On a *voir dire* hearing on defendant's motion to suppress the testimony of two witnesses concerning incriminating statements made by defendant to them while all three were prisoners, the trial court was not required to make findings of fact as to the voluntariness of the admissions or as to whether the witnesses were not agents of the sheriff's department at the time the statements were made to them by defendant, since defendant confided to the witnesses under no pressure and since there was no conflict in the evidence as to whether the witnesses were sheriff's agents.

State v. Monk

**6. Criminal Law § 99— court's interruption of cross-examination — no expression of opinion**

The trial court did not express an opinion regarding the testimony of a State's witness when he stopped defendant's cross-examination with respect to prior offenses to inquire as to the basis for his questions, nor did the court express an opinion when he thereafter instructed the jury that defendant was bound by the witness's answers and that the questions regarding the prior crimes were not to be considered.

**7. Criminal Law § 99— court's questioning of witness — no expression of opinion**

The trial court did not express an opinion by questioning a State's witness regarding certain liquor which had been given to the witness while in protective custody.

**8. Criminal Law § 99— court's effort to expedite trial — no expression of opinion**

The trial court did not express an opinion and defendant was not prejudiced where the court offered defense counsel the opportunity to examine a witness's notes during a recess and expressed the hope that a stipulation could be made or that cross-examination could be expedited.

**9. Constitutional Law § 21; Searches and Seizures § 1— defendant's car in garage — exterior searched — standing of defendant to assert unlawfulness**

Defendant in a first degree murder prosecution did not have standing to assert an unlawful search and seizure and was not entitled to a *voir dire* where defendant was not present at the garage where his car was located at the time it was searched; he was not charged with a crime dealing with possession of the seized evidence; he had no proprietary or possessory interest in the garage which was searched; and defendant had no protected interest in the outside portions of the car from which the soil samples were taken, particularly in light of the evidence tending to show that he had abandoned or sold the car.

**10. Criminal Law § 61— expert opinion testimony as to tire tracks — admissibility**

Evidence that a witness had over ten years of experience in latent identification procedures, including tire print, fingerprint and footprint identification and analysis was sufficient to support the trial court's finding that the witness was an expert, and the court did did not err in allowing the witness to testify that he compared a plaster cast of a tire print made adjacent to the scene of the crime with the tire taken from defendant's automobile and that, in his opinion, the tire was the same one that made the imprint from which the plaster cast was taken.

**11. Criminal Law § 50— soil samples — expert testimony admissible**

Evidence was sufficient to support the finding of the trial court that a witness was an expert in the field of soil analysis where it

tended to show that he held a doctorate in soil science and chemistry, had been active in his field for over 12 years and during this time received both laboratory and field experience; and he was the author of approximately a dozen published articles and held several patents in the field. The court properly allowed the witness to give his opinion that soil samples taken from defendant's car and those taken from the dirt road adjacent to the scene of the crime were from the same source.

12. **Criminal Law § 102— prosecutor's jury argument — comments on veracity of witness — no prejudice**

Statements by the district attorney in his jury argument that he had known an expert witness for the State for 15 years, had heard him on prior occasions, and that the witness was telling the truth and statement by the assistant attorney general that the witness was "one of the best men in the State of North Carolina," though disapproved by the Supreme Court, were not so prejudicial to defendant as to warrant a new trial.

13. **Criminal Law § 163— misstatements of evidence in jury charge — necessity for calling court's attention to**

Any minor misstatement in the trial judge's statement of facts or contentions must be brought to his attention at trial so that he may have an opportunity to correct any misstatements in order to avoid the expense of a retrial, and a defendant may not avoid the operation of this rule by contending that the trial judge's misstatements were impermissible expressions of opinion.

14. **Criminal Law § 114— jury charge — no expression of opinion by court**

Trial judge's statement to the jury in his closing remarks that he had "done everything humanly possible for you [the jury] to be unaware of the opinion that I have . . . " did not constitute an expression of opinion in violation of G.S. 1-180.

15. **Criminal Law § 119— requested instructions — exact language of request need not be used**

The trial court is not required to give a requested instruction in the exact language of the request; however, when the request is correct in law and supported by the evidence in the case, the court must give the instruction in substance.

16. **Constitutional Law § 36; Homicide § 31— first degree murder — life imprisonment substituted for death sentence**

A sentence of life imprisonment is substituted for the sentence of death imposed upon defendant in a first degree murder prosecution.

17. **Criminal Law §§ 145, 166— lengthy statement of facts in brief — cost of printing part of record taxed to attorney**

The cost of mimeographing 25 pages of the record on appeal is taxed against counsel for defendant where he failed to comply with Rule 28 of the Rules of Appellate Procedure requiring that a summary of the facts if contained in the brief should be short.

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Martin (Perry), J.,* at the 8 December 1975 Session of NEW HANOVER Superior Court.

Defendant was charged in separate bills of indictment, proper in form, with the armed robbery and the murder of Donnie P. Christian on 5 April 1973. The cases were consolidated for trial and defendant was convicted of murder in the first degree. A sentence of death was imposed.

This is the second appeal in this case. In the first, we granted defendant a new trial on the ground of improper arguments to the jury by the district attorney. *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975).

The evidence for the State tended to show the following: On the evening of 5 April 1973, Donnie P. Christian, the victim, was working in the office of his father's poultry plant in Wilmington. At approximately 8:45 or 9:00 p.m., Christian picked up the cashbox containing the day's receipts of the plant (about $2,400 in cash, $1,700 in checks) and went to his car. As was his routine each evening, Christian drove to the plant gate and unleashed the watchdog inside the fence surrounding the plant. He then closed the gate behind him.

The body of Donnie Christian was found by his father a few minutes after 9:00 p.m. on the night of 5 April 1973. Mr. Christian testified that his son's body was lying next to his car. There was a pool of blood near a road adjacent to the gate and there were several streaks of blood leading from the pool of blood to the location of the body. Donnie Christian was taken to the hospital and an autopsy was performed. It was determined that he died from loss of blood caused by a wound inflicted by a .22-caliber gun.

A Pall Mall cigarette butt was found at the scene of the crime. Later, while in custody, defendant was seen smoking a Pall Mall cigarette and was seen throwing away an empty Pall Mall cigarette pack. A plaster cast of a tire track found upon a dirt road adjacent to the scene of the crime was made and soil samples from the dirt road were taken. At trial, evidence was adduced tending to show that the tire print taken from the dirt road matched that made from the tire of the automobile which the evidence tended to show defendant was driving at the time of the murder. The soil samples taken from the dirt road

matched those samples taken from defendant's automobile. The cashbox containing the plant's daily receipts was missing, together with deceased's wallet and a money clip containing two one-hundred dollar bills. These items were never located.

The State further introduced statements which defendant made to two cell mates while in jail. Mr. Charles Edward Pennington testified that he shared a cell with defendant for several days. During this time, defendant stated that he and a friend had planned to rob the person who carried the daily cash receipts from Christian Poultry Company. Defendant further said that he and his friend approached Donnie Christian, who was carrying the receipts, and demanded the money. When Christian refused, defendant stated that he "capped him" or "blew him away." Mr. Victor Jerome McClain was also in a cell with defendant for several days and testified at trial. During the period in which they shared a cell, defendant made statements to McClain quite similar to those statements made to Pennington.

The defendant did not take the stand and did not offer any evidence.

Other evidence pertinent to the decision of this case will be set out in the opinion.

*Attorney General Rufus L. Edmisten, Assistant Attorney General Lester V. Chalmers, Jr., and Associate Attorney Lawrence Pollard for the State.*

*Charles E. Rice III for defendant appellant.*

MOORE, Justice.

By his first two assignments of error defendant challenges the district attorney's decision to place him on trial for a capital crime, and the validity of the bill of indictment charging him with that offense. These assignments require little discussion in view of the holding of the Supreme Court of the United States in *Woodson v. North Carolina,* 428 U.S. _____, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976), invalidating the death penalty provisions of G.S. 14-17. This decision did not affect the verdict however; only the imposition of a sentence of death. Hence, capital punishment is no longer an issue in this case. *State v. Davis,* 290 N.C. 511, 227 S.E. 2d 97 (1976).

Next, defendant assigns as error the denial of his motion to sequester jurors on *voir dire.* This motion was directed to

the sound discretion of the trial judge. *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974); *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745 (1972); *State v. Perry,* 277 N.C. 174, 176 S.E. 2d 729 (1970). We are unable to find any abuse of discretion in its denial.

Defendant further contends that the trial judge erred in denying his motion to sequester the jury and the State's witnesses during the trial. G.S. 9-17 provides, in part: "The presiding judge, *in his discretion,* may direct any jury to be sequestered while it has a case or issue under consideration." (Emphasis added.) The motion of the defendant for the sequestration of witnesses was addressed to the discretion of the court. *State v. Davis, supra; State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561 (1970); *State v. Yoes* and *Hale v. State,* 271 N.C. 616, 157 S.E. 2d 386 (1967); *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506 (1965). Defendant has shown no abuse of discretion. These assignments are overruled.

Defendant makes numerous assignments of error relating to the selection of the jury. The thrust of these assignments is that the trial judge erred in allowing prospective jurors to be questioned concerning their beliefs as to capital punishment, and in excusing certain jurors because of their opinions as to capital punishment. The questions propounded to the jurors were those authorized by *Witherspoon v. Illinois,* 391 U.S. 150, 20 L.Ed. 2d 776, 88 S.Ct. 1770 (1968), and *State v. Honeycutt,* 285 N.C. 174, 203 S.E. 2d 844 (1974).

[1] In present case, defendant did not exhaust his peremptory challenges and the jury as empaneled was acceptable to defendant and did not contain any juror to which he had objected. Three jurors were challenged by the State for cause and the challenges were allowed. Each of these jurors stated that he or she would not return a verdict under any circumstances, knowing that the death penalty would be imposed. Further, each juror excused for cause stated that it would be impossible to return a verdict of first degree murder even though the State proved the defendant guilty beyond a reasonable doubt. These jurors were properly excused. *State v. Avery,* 286 N.C. 459, 212 S.E. 2d 142 (1975); *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974). *See also Witherspoon v. Illinois, supra.* As stated by Justice Branch in *State v. Honeycutt, supra,* at 178, 203 S.E. 2d at 847:

" . . . It is now well established that in a capital case a juror may be properly challenged for cause if he indicates he could not return a verdict of guilty knowing the penalty would be death, even though the State proved to him by the evidence and beyond a reasonable doubt that the accused was guilty of the capital crime charged. [Citations omitted.]" *See also State v. Washington*, 283 N.C. 175, 195 S.E. 2d 534 (1973) ; *State v. Cook*, 280 N.C. 642, 187 S.E. 2d 104 (1972).

These assignments are overruled.

[2] Dr. Leach, a witness for the State, was found by the trial court to be a medical doctor and an expert in the field of pathology. He testified that in his opinion abrasions and lacerations on the face of the deceased were due to contact with some form of rough surface or object. Defendant contends this was hearsay. Obviously, this contention is without merit. The doctor was only expressing an opinion based upon facts within his own knowledge. This he was qualified to do. *See* 1 Stansbury, N.C. Evidence § 135 (Brandis Rev. 1973), and cases cited therein.

[3] By his next assignment, defendant argues that the court erred in allowing Deputy Sheriff Blanton to identify a bullet, taken from the body of deceased, as a .22-caliber bullet. Blanton had been a deputy sheriff for fourteen and one-half years and during that time had fired a .22-caliber pistol and other weapons on many occasions. The .22-caliber bullet, identified as State's Exhibit No. 21, was introduced into evidence without objection. While the trial court did not expressly find this witness to be an expert in ballistics, the court did allow him to give his opinion as to the caliber of the bullet. By admitting the testimony as to the caliber of the bullet, the court presumably found him to be an expert. There was ample evidence to support such finding. *State v. Jenerett*, 281 N.C. 81, 187 S.E. 2d 735 (1972) ; *Teague v. Power Co.*, 258 N.C. 759, 129 S.E. 2d 507 (1963) ; *State v. DeMai*, 227 N.C. 657, 44 S.E. 2d 218 (1947). This assignment is overruled.

Bertie Brailford testified for the State that he had worked at Christian Poultry Company for about nine months preceding 5 April 1973. He stated that some three or four weeks prior

to 5 April 1973 he had a conversation with one Sam Taylor concerning this employment. The following then transpired:

"MR. CARRIKER: What did you tell Sam Taylor at that time?

"MR. BRAILFORD: I told him he came to my house to borrow some money.

"MR. RICE: Objection, Your Honor—He is talking about Sam Taylor coming to his house for some reason—it is not material at this time.

"MR. CHALMERS: Sam Taylor will be offered by the State, if Your Honor please. We can't put on all of our evidence at one time.

"THE COURT: If your objection is based solely on the fact that it is not material it is overruled—is that the basis of your objection?

"MR. RICE: Yes, sir.

"THE COURT: Overruled."

Without further objection and without any motion thereafter to strike, Brailford then testified:

"I told Sam where I worked, where it was located. I told him that it was possible for him to get two, or three thousand dollars there. I told him that it was dark. That it would be dark at the place where I worked. That the bossman came out usually alone at night. That he wouldn't have a weapon of any kind. That he would drive his car to the gate, get out of the car, release the dog, lock the gate behind him and get into the car.

"Donnie Christian was my bossman back on April 5, 1973.

"After I had told this to Sam Taylor, Chris Spicer came to my home. Chris Spicer came to my home while Sam Taylor was still there. I had a conversation with Chris Spicer in Sam Taylor's presence, this being about three or four weeks prior to April 5, 1973.

"MR. CARRIKER: What, if anything, did you tell Chris Spicer at that time?"

On objection, the court held a *voir dire* and in the absence of the jury Brailford testified:

"At this time, Sam Taylor and Christopher Spicer were in my home. While Chris Spicer was in my home on that date, I related to him the same story that I had repeated to Sam. I told Chris Spicer where I worked, where it was located. I told him how my bossman came out with the cashbox at night, that he would be alone, that he wouldn't have any weapon of any kind, and that there was a road across the street from the plant where a car could be concealed.

"After I told this to Chris Spicer, he and I walked out of my house to a car that was parked on Taylor Street. It was a white '68 Chevy, two-door hardtop, green vinyl top. We continued to talk about Christian Poultry on the way out to the automobile.

"When we got to the automobile I observed Isaac Monk, the defendant in this case, behind the [steering] wheel of the automobile.

"MR. CARRIKER: Did you continue to discuss Christian Poultry after you reached the automobile?

"MR. BRAILFORD: Most of the same thing over again."

The court then ruled that the conversation Brailford had with Spicer when defendant was not present was inadmissible. The witness Brailford then testified before the jury without objection:

"Three or four weeks prior to April 5, 1973 I had a conversation with Chris Spicer in my home.

"After we had this conversation Chris Spicer and I left my home and we walked to a car that was parked on Taylor Street in the project. The vehicle was a white '68 Chevy Impala Custom with a green vinyl top, two-door hardtop.

"I observed Isaac Monk, the defendant in this case, behind the wheel of that vehicle.

"MR. CARRIKER: Did you continue to talk with Mr. Spicer once you arrived at the automobile?

"MR. BRAILFORD: Once we reached the car there wasn't too much said about it. We talked about it on the way to the car but once we reached the car there wasn't too much said.

"Q. Did you speak to Mr. Monk once you reached the car?

"A. I looked into the car at him.

"Q. Did you say anything while you were at the car in Mr. Monk's presence?

"A. No.

"Christopher Spicer got into the car with Monk and they drove off.

"On approximately the Monday or Tuesday prior to April 5, 1973, I again saw Chris Spicer. He came to my house. We had a conversation at that time on the front porch of my house.

"After the conversation, I did not leave my home. Chris Spicer left and I saw him go to a car that was parked on the west side of Fourth Street. I could see that from my porch. I observed someone else in that vehicle. That vehicle was a white '68 Chevy Impala Custom, green vinyl top."

Brailford further testified that this was the same vehicle in which he had observed defendant some three or four weeks prior to 5 April 1973.

Immediately prior to the testimony of Brailford, the witness McClain testified that while he and defendant were sharing a cell in the Wilmington jail defendant told him that he and Spicer had talked to Brailford about:

" . . . what would be a good place to hit, make some money, stuff like that, and Bradford [Brailford] told them about the place where he was working at, how much the guy would be handling, you know. When he would come out he wouldn't have no weapon and what time and everything like that, and he said him and Spicer, they didn't do it right away, but about two or three weeks later they went to the place in his car and he said he parked across the street in a driveway. Monk said they were driving his car.

"He said they waited for the man to come out and the man came out the gate. He said he went across the street where he was. He said the man came out in a little small car, and when he got out of the car, he drew the gun on him. He said the man put up a scuffle. He was by himself. He said he had to shoot the man and he got the money. Him and Spicer left. He said somebody started running their mouth too much and they got picked up.

"Monk said that he and Spicer drove up in Monk's car to the place they were going to hit and that Monk got out of the car and went across the street to where the place was. He said that the dude came out, I think to lock the gate or something like that. He said he drew the gun on the guy and the guy put up a scuffle. He said he couldn't scuffle him down by himself, so he shot him.

"Monk said they got the money and didn't say how much money."

[4] Thus, before Brailford testified, practically the same testimony was already before the jury through defendant's admission to McClain. Hence, admitting that the court erred in allowing Brailford's testimony as to what he hold Sam Taylor, under the circumstances in this case we believe it to be harmless error and not prejudicial. *State v. Grace*, 287 N.C. 243, 213 S.E. 2d 717 (1975) ; *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972). This assignment is overruled.

[5] When the witnesses McClain and Pennington were called to testify for the State, defendant renewed his motion to suppress their testimony. The trial judge conducted a *voir dire* as to each witness. It appeared that both of these witnesses were cell mates of defendant while in the Wilmington jail awaiting trial. The evidence showed that defendant volunteered the statements to which they testified concerning his participation in the robbery and shooting of Donnie Christian. Defendant first contends that the trial court should have made findings of fact upon which the admissibility of this evidence depended. As Justice Higgins said in *State v. Perry*, 276 N.C. 339, 345-46, 172 S.E. 2d 541, 546 (1970) :

"The defendant misinterprets the necessity for the voir dire examination to determine the voluntariness of his admissions to his jailmate Pierce. As a general rule, volun-

tary admissions of guilt are admissible in evidence in a trial. To render them inadmissible, incriminating statements must be made under some sort of pressure. Here we quote from the Supreme Court of the United States in *Hoffa v. United States,* 385 U.S. 293, 17 L.Ed. 2d 374: 'Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. . . . "The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak." . . . . ' "

Defendant further contends, however, that the trial court should have made findings of fact and included therein a finding that the witnesses McClain and Pennington were not agents of the sheriff's department at the time the statements were made to them by defendant. The trial judge on *voir dire* allowed defendant's counsel to cross-examine these witnesses as to whether they were acting as such agents at the time. Both denied it. Defendant offered no evidence to the contrary. Where there is no conflict on the evidence heard by the court, it is not error to admit the statements without making specific findings. *State v. Biggs,* 289 N.C. 522, 223 S.E. 2d 371 (1976) ; *State v. Whitley,* 288 N.C. 106, 215 S.E. 2d 568 (1975). The trial court did not commit error in permitting the witnesses McClain and Pennington to repeat the incriminating admissions defendant voluntarily made to them while all of them were prisoners.

Defendant next contends that his right of cross-examination was improperly limited. In numerous cases we have held that cross-examination should be searching and wide latitude should be allowed in the questions propounded. *See, e.g., State v. Ross,* 275 N.C. 550, 169 S.E. 2d 875 (1969), and cases cited therein. However, the trial court is given a great amount of discretion in the control of cross-examination. Further, its rulings will not be disturbed except for an abuse of discretion or when prejudicial error is disclosed. *State v. Ross, supra.*

As was stated by Justice Huskins in *State v. Miller,* 288 N.C. 582, 594, 220 S.E. 2d 326, 335 (1975) : " . . . Exclusion of evidence which could not have affected the result may not be

held prejudicial. . . . " In instant case, none of the excluded evidence could have affected the result of the case. The questions dealt largely with collateral matters and could have had little bearing upon the jury's verdict. Further, many of the questions were repetitive and argumentative and properly excluded. Accordingly, we find no abuse of discretion nor prejudicial error in the trial judge's rulings.

Defendant also contends that the trial judge expressed an opinion regarding the testimony of the State's witnesses Charles Edward Pennington and Dr. Otis Philen, in violation of G.S. 1-180.

[6]  During the cross-examination of witness Pennington, defendant attempted to impeach the witness by showing that he had committed certain crimes. After defendant had asked whether the witness had been convicted of several crimes, which the witness denied having committed, the trial judge requested that defense counsel approach the bench. After a conference at the bench, the trial judge instructed the jury that defendant was bound by the witness's answers and that the questions regarding the prior crimes were not to be considered. Later, during cross-examination, the trial judge asked the witness several questions regarding certain liquor which had been given to the witness while in protective custody. Evidence of the gifts of the liquor had been brought out by defendant on cross-examination.

The conduct of a trial is in the discretion of the trial judge and he is charged with ensuring that a defendant has his cause presided over by the "cold neutrality of the impartial trial judge." *State v. McEachern,* 283 N.C. 57, 59, 194 S.E. 2d 787, 789 (1973). However, the trial judge must exercise his power to control the course of a trial in order to ensure justice for all the parties. *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974). To the end that justice is received by all the parties, the trial judge may ask questions of a witness and instruct the jury on the proper use of evidence. *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968).

In instant case, the trial judge properly stopped the cross-examination by defendant to inquire as to the basis for his questions. His instruction to the jury, while not perfect, certainly did not express any opinion and did not deprive defendant of the fair trial to which he was entitled. *See, e.g., State v.*

*Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975) ; *Lutwak v. United States,* 344 U.S. 604, 97 L.Ed. 593, 73 S.Ct. 481 (1953).

**[7]** The questioning of the witness by the trial judge comes within the well established rule that:

> "[O]n occasion, it is the duty of the trial judge to ask questions in order to clarify testimony or to elicit over-looked, pertinent facts. [Citations omitted.]" *State v. McEachern, supra,* at 59, 194 S.E. 2d at 789.

Thus, we find no reversible error in the trial judge's actions with respect to the questioning of the witness Pennington.

**[8]** Likewise, we find no error in the trial judge's comments during the testimony of Dr. Philen. The trial judge offered defense counsel the opportunity to examine Dr. Philen's notes during a recess and expressed the hope that a stipulation could be made or that cross-examination could be expedited. We fail to see how this statement prejudiced defendant. If anything, the trial judge's order was beneficial to defendant since it gave him full access to Dr. Philen and his notes.

**[9]** Defendant next contends that the trial court failed to hold a *voir dire* hearing upon a motion to suppress a tire seized by the State and certain soil samples taken from an automobile. The evidence discloses that sometime after the date of the robbery-murder, defendant had an automobile accident. His car was towed to a garage on 12 April 1973. On that date defendant took some articles from the vehicle and then left. He never returned. The owner of the garage gave police officers permission to take certain soil samples from the underside of the car and permission to take a tire which defendant had removed from the car and left in the garage. On these facts, defendant contends that he was entitled to a *voir dire* on his purported motion to suppress, and that the tire and soil samples should not have been allowed into evidence. We find no merit in this contention.

Rights against unreasonable searches and seizures under the Fourth Amendment are personal and, unlike some constitutional rights, may not be asserted by another. *Brown v. United States,* 411 U.S. 223, 36 L.Ed. 2d 208, 93 S.Ct. 1565 (1973). "[T]here is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were

not charged with an offense that includes, as an essential element of the offense charged, possession of seized evidence at the time of the contested search and seizure. . . . " *Brown v. United States, supra,* at 229, 36 L.Ed. 2d at 214, 93 S.Ct. at 1569; *State v. Gordon,* 287 N.C. 118, 213 S.E. 2d 708 (1975); *State v. Curry,* 288 N.C. 660, 220 S.E. 2d 545 (1975).

In the case at bar, defendant was not present at the garage at the time of the search and was not charged with a crime dealing with possession of the seized evidence. Defendant clearly had no proprietary or possessory interest in the garage which was searched. Further, defendant had no protected interest in the outside portions of the car from which the soil samples were taken. This is particularly true in light of the evidence tending to show that he had abandoned or sold the car. We hold, therefore, that defendant did not have standing to assert an unlawful search and seizure and was not entitled to a *voir dire.*

At trial, two witnesses were permitted to testify as experts. Dr. Otis Philen was tendered and accepted as an expert in the field of soil analysis and Steven Jones was accepted as an expert in the field of latent identification. Defendant contends that the testimony of both experts should have been excluded.

[10] Steven Jones testified that he had over ten years of experience in latent identification procedures, including tire print, fingerprint and footprint identification and analysis. Jones was allowed to testify, over objection, that he had compared a plaster cast of a tire print made adjacent to the scene of the crime with the tire taken from defendant's automobile. In his opinion, the tire was the same one that made the imprint from which the plaster cast was taken.

The finding by the trial judge that Mr. Jones was an expert in his field is supported by competent evidence and is conclusive. *See State v. Carey,* 288 N.C. 254, 218 S.E. 2d 387 (1975). We have also approved the use of plaster casts of tire imprints in prior cases, and we here do so again. *State v. Williams,* 276 N.C. 703, 174 S.E. 2d 503 (1970); *State v. Brown,* 263 N.C. 327, 139 S.E. 2d 609 (1965); *State v. Young,* 187 N.C. 698, 122 S.E. 667 (1924).

[11] Dr. Otis Philen testified at trial as an expert in the field of soil analysis. Suffice it to say, he was well qualified. The record shows that Dr. Philen holds a doctorate degree in soil

science and chemistry from North Carolina State University. He had been active in his field for over twelve years and during this time he received both laboratory and field experience. Further, he was the author of approximately a dozen published articles and is the holder of several patents in the field. The finding of the trial judge that Dr. Philen was an expert in his field was clearly proper and was supported by the evidence. *State v. Carey, supra.*

At trial, Dr. Philen testified regarding the results he obtained when soil samples taken from a dirt road adjacent to the scene of the crime were compared with soil samples taken from beneath defendant's automobile. Dr. Philen testified in detail as to the procedures he employed in analyzing these samples. The objective of this analysis was to determine whether the minerals contained in each sample came from the same source. Dr. Philen stated, over objection, that in his opinion the samples taken from defendant's car and those taken from the dirt road adjacent to the scene of the crime were from the same source.

We find no error in the admission of this opinion testimony. As was held in *State v. Mitchell,* 283 N.C. 462, 196 S.E. 2d 736 (1973), the opinion of an expert witness is admissible when it is shown that the witness, through study or experience, has acquired such skill and expertise that he is better qualified than the jury to form an opinion on the subject matter to which his testimony applies. We feel that the evidence in the present case clearly indicates that the witness Philen, through study and experience, possessed the requisite knowledge to give opinion testimony. *See also State v. Hairston* and *State v. Howard* and *State v. McIntyre,* 280 N.C. 220, 185 S.E. 2d 633 (1972). Therefore, his testimony was correctly allowed.

[12] Defendant next contends that he is entitled to a new trial because of improper arguments to the jury made by the district attorney and the assistant attorney general. During his argument, the district attorney stated that he had known Steven Jones for fifteen years and had heard him testify on prior occasions. The district attorney further stated, in substance, that Jones was telling the truth. The assistant attorney general stated that witness Jones "is one of the best men in the State of North Carolina." Defendant objected to both statements and his objections were overruled. The arguments to the jury are not

included in the record. We do not know in what context the statements were made, what might have induced them, or what defense counsel might have said. *State v. Taylor,* 289 N.C. 223, 221 S.E. 2d 359 (1976).

It is a well established rule that the prosecuting attorney may not argue to the jury facts not in evidence nor travel outside the record by injecting his personal views and beliefs. *State v. Taylor, supra.* However, the scope of the arguments to the jury is in the sound discretion of the trial judge and his rulings will not be disturbed except upon a finding of prejudicial error. *State v. McKenna,* 289 N.C. 668, 224 S.E. 2d 537 (1976). While we do not approve of the arguments stated above, we do not find prejudice sufficient to warrant a new trial.

[13] Defendant further contends, in numerous assignments of error, that the trial judge expressed an opinion upon the evidence, in violation of G.S. 1-180, during his statements of contentions and facts. We have held in many cases that any minor misstatement in the trial judge's statement of facts or contentions must be brought to his attention at trial. *See State v. Bush,* 289 N.C. 159, 221 S.E. 2d 333 (1976), and cases cited therein; *Lewis v. Barnhill,* 267 N.C. 457, 148 S.E. 2d 536 (1966). The reason for this rule is that the trial judge should be given an opportunity to correct any misstatements in order to avoid the expense of a retrial. We have further held that a defendant may not avoid the operation of this rule by contending that the trial judge's misstatements were impermissible expressions of opinion. *State v. Bush, supra.*

In instant case, defendant failed to object or bring to the attention of the trial judge any of the statements which he now contends constitute error. In light of the fact that he failed to object and the fact that the misstatements are all relatively minor, we find no merit in this contention.

[14] In his closing remarks to the jury, the trial judge stated, in substance, that he had attempted to be fair and impartial in all of his actions at trial. He further stated that if he had expressed any opinion upon any matter, the jury should disregard it. He then stated that he had "done everything humanly possible for you [the jury] to be unaware of the opinion that I have. . . . " Standing alone, this statement would appear to imply that the trial judge had an opinion about the case. How-

ever, there is no indication in the record, and defendant fails to point out any, as to what the trial judge's opinion may have been. Further, we feel that the judge's statement, construed as a whole, was sufficient to indicate that he did not have any opinion.

[15]   In his final assignment of error, defendant contends that the trial court committed reversible error in denying certain instructions which he requested. As we held in *State v. Beach,* 283 N.C. 261, 196 S.E. 2d 214 (1973), the trial court is not required to give a requested instruction in the exact language of the request. However, when the request is correct in law and supported by the evidence in the case, the court must give the instruction in substance. *State v. Howard,* 274 N.C. 186, 162 S.E. 2d 495 (1968).

Defendant requested instructions upon interested witnesses, impeachment of witnesses and expert testimony. The trial court gave the requested instructions in substance. The portions of defendant's requested instructions which were not given were either not supported by the law in this jurisdiction or not supported by the facts in this case. Thus, we find no merit in this contention.

[16]   We have carefully considered the entire record in this case as well as each of defendant's assignments of error. Having done so, we find no prejudicial error. We therefore affirm the verdict. However, in view of the decision in *Woodson v. North Carolina, supra,* we hold that the punishment in this case is life imprisonment. Therefore, the judgment imposing a sentence of death upon defendant Monk is vacated and a sentence of life imprisonment substituted in lieu thereof. *State v. Davis, supra.* Accordingly, it is hereby ordered that this case be remanded to the Superior Court of New Hanover County with directions (1) that the presiding judge, without requiring the presence of defendant, enter as to defendant a judgment imposing life imprisonment for the first degree murder of which he has been convicted, and (2) that in accordance with this judgment the clerk of superior court issue commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk furnish the defendant and his attorney a copy of the judgment and commitment, as revised, in accordance with this opinion.

**[17]** Defendant's counsel in this case, by failing to comply with Rule 28 of the Rules of Appellate Procedure, 287 N.C. 671, 741, has incurred considerable unnecessary expense. In case of an indigent, such as we have here, this expense is borne by the taxpayers of this State. Rule 28 of the Rules of Appellate Procedure provides that the brief shall contain a short summary of the essential facts when these will be helpful to an understanding of the questions presented for review. Instead of such summary, defendant's counsel devotes 27 pages of his brief to stating the case and summarizing the testimony of each witness. He then devotes over 200 pages of his brief to presenting his 43 assignments of error, together with arguments and authorities supporting these assignments. While we respect counsel for his zeal, we feel that he could have better presented his case without such a lengthy review of the evidence and without so much repetition and overlapping in his arguments. His failure to do so has added unwarranted expenses which the State should not be required to bear on behalf of this indigent defendant. Pursuant to Rule 9 (b) (5) of the Rules of Appellate Procedure, the cost of mimeographing 25 pages of the record on appeal is hereby taxed against counsel for defendant.

No error in the verdict.

Death sentence vacated.