STATE OF NORTH CAROLINA v. MARK A. SPEARS

No. 8412SC51

(Filed 16 October 1984)

1. Criminal Law § 52— medical testimony—opinion as to character of metallic artifacts—admissible

There was no error in allowing a physician who treated an assault victim to testify that there were metallic artifacts on the victim's head "like something frequently seen in gunshot wounds" where the doctor had been admitted as an expert in neurosurgery, but not in forensic medicine or ballistics; the doctor's expertise in the use of the CAT scan as a diagnostic tool was unchallenged; and the doctor testified concerning an objective finding of his examination, did not assert that the injury was caused by a shotgun or express an opinion as to the guilt or innocence of defendant.

2. Criminal Law § 102.6— prosecutor's argument—characterization of crime—proper

Although a prosecutor characterized the crime as terrible and may have improperly traveled outside the record and injected his own personal beliefs, he made no comment as to the character of the defendant and there was no prejudicial error.

**3. Criminal Law § 138— mitigating circumstances—non-statutory factors—obtaining medical aid for victim**

In a prosecution for assault with a deadly weapon inflicting serious injury, there was no error in the trial court's failure to consider as a mitigating factor that defendant took the victim to an emergency clinic. The consideration of non-statutory mitigating factors is within the discretion of the trial judge; it is significant in this case that defendant put the victim in need of medical attention. G.S. 15A-1340.4(a).

Judge WELLS concurring in part and dissenting in part.

APPEAL by defendant from *Britt, Samuel E., Judge.* Judgment entered 5 October 1983 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 25 September 1984.

Defendant was convicted of assault with a deadly weapon inflicting serious injury and was sentenced to ten years imprisonment, a sentence in excess of the presumptive term. From the judgment entered, he appealed.

*Attorney General Rufus L. Edmisten, by Associate Attorney General Michael Smith, for the State.*

*Appellate Defender Adam Stein for defendant-appellant.*

HILL, Judge.

The State's evidence tends to show that defendant spent the afternoon of 19 November 1982 with Kathy Williams and Judy Gibson in their trailer drinking beer and smoking marijuana. The three decided to go in defendant's pickup truck to a local tavern. On the way, defendant suggested going to a wooded area to smoke more marijuana and the women agreed. The defendant pulled off the road into a wooded area where the three drank beer and smoked marijuana. When Ms. Williams and Ms. Gibson told defendant they were ready to leave, defendant pulled a shotgun out of the truck, pointed it at the women, and told them to get out of the truck. When the women hesitated, defendant grabbed Ms. Gibson by the hair and jerked her out of the truck. Defendant ordered the women to lie face down on the ground and not look at each other. The women protested but complied with his demands.

Ms. Williams testified that while she was on the ground defendant put the gun between her legs and she heard a click. She

testified that defendant told her he should kill her now. Ms. Gibson testified that defendant then went over to her, fondled her breasts, put the gun to her head, and told her to stand up and take off her shirt. Ms. Gibson stood up and began to take off her shirt as ordered, then pulled it down and started running while calling to Ms. Williams to get up and run also. As the two women began running away, defendant called out to Ms. Gibson, "Judy, I'm not playing with you, I'll kill you." Defendant then fired a shot and Ms. Gibson noticed she was bleeding from the head. Defendant then came over to Ms. Gibson and hit her in the mouth and on the head with the gun until she lost consciousness.

Defendant's version of the events leading up to the shooting was as follows: He testified that while he and Ms. Gibson and Ms. Williams were smoking marijuana and talking in the woods, Ms. Gibson got out of the truck to use the bathroom. While she was gone, he continued to talk to Ms. Williams until he heard a noise. He turned and saw Ms. Gibson pointing a rifle at him. Defendant testified that Ms. Gibson told him to get out of the truck. As he began to get out of the truck, he grabbed the gun from her causing it to go off. Ms. Gibson backed off and stated, "I have been shot." Defendant testified that as he stood there looking at her, Ms. Gibson started coming toward him with a knife. Defendant then hit Ms. Gibson with the gun and the butt of the gun flew off. Ms. Gibson fell down but got up and came after defendant again. Defendant hit her with the gun again and she fell down. He looked for Ms. Williams but could not find her. Defendant put Ms. Gibson in his truck and transported her to an emergency clinic where he knocked on the door and left her on the steps.

[1] In his first assignment of error defendant contends the trial court erred by allowing Dr. Pennick, the physician who treated Ms. Gibson after she was injured, to express his opinion as to the character of metallic artifacts he found on the left side of Ms. Gibson's head. After defendant left Ms. Gibson at the emergency clinic, she was treated by Dr. Pennick, who found her on the steps of the clinic bleeding from the head. Ms. Gibson had a severe depressed skull fracture and lacerations on her head. Dr. Pennick did a CAT scan of Ms. Gibson's head to help ascertain the extent of her injuries. Dr. Pennick testified that the resulting x-ray films revealed, "some metallic artifacts on the left side of the head in-

*dicating some metals, and it looks like something very frequently seen in gunshot wounds, some pellets. . . .*"

The defendant asserts that although Dr. Pennick was properly admitted as an expert in neurosurgery, he was not an expert in forensic medicine or ballistics and therefore could not properly testify as to the character of 'the metallic artifacts seen on the CAT scan x-ray film. The standard used to determine whether an expert is competent to give an opinion concerning an issue at trial is whether:

    1) the witness because of his expertise is in a better position to have an opinion on the subject than the trier of fact,

    2) the witness testifies only that an event *could* or *might* have caused an injury but does not testify to the conclusion that the event did in fact cause the injury . . . and

    3) the witness does not express an opinion as to the defendant's guilt or innocence.

*State v. Brown*, 300 N.C. 731, 733, 268 S.E. 2d 201, 203 (1980).

At trial, defendant stipulated that Dr. Pennick was an expert in the field of neurosurgery and the court accepted him as such. Defendant did not challenge Dr. Pennick's expertise in the use of the CAT scan as a diagnostic tool. Dr. Pennick testified concerning an objective finding of his examination, that there were metallic artifacts on the left side of Ms. Gibson's head. His characterization of these artifacts as, "like something frequently seen in gunshot wounds" did not assert that in fact the injury was caused by a shotgun. In addition, Dr. Pennick expressed no opinion as to the guilt or innocence of the defendant. Therefore, we conclude that Dr. Pennick did not exceed his area of expertise by expressing his opinion based upon facts admittedly within his knowledge. *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976).

[2] Defendant next contends the prosecutor made an improper closing argument to the jury. As part of his closing argument the prosecutor said:

    As part of everyday experience, we hear about a crime being committed some place. We say to ourselves, that's terrible. I submit to you, this is one of those crimes. We go on

further and say to ourselves, something ought to be done about that. . . . They ought to do something. Ladies and Gentlemen, you twelve judges of Cumberland County are now in a position to do something about that.

It is well settled that counsel must be allowed wide latitude in the argument of hotly contested cases. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). The scope of the arguments to the jury is in the sound discretion of the trial judge and his ruling will not be disturbed except upon a finding of prejudicial error. *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976). Here, although the prosecutor characterized the crime committed as terrible, he made no comment as to the character of the defendant. *See State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975). The prosecutor may have improperly traveled outside the record and injected his own personal beliefs, but we do not believe the digression constituted prejudicial error.

[3]   Lastly, defendant assigns as error the trial court's failure to find as a mitigating factor that immediately after the commission of the offense, he transported Ms. Gibson to an emergency clinic where she received life saving treatment.

The court's discretion to impose a sentence within the statutory limits, but greater or lesser than the presumptive term is carefully guarded by the requirement that he make written findings in aggravation or mitigation which findings must be proved by a preponderance of the evidence. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983). The sentencing judge *must* consider each of the statutory aggravating or mitigating factors. *State v. Jones*, 309 N.C. 214, 306 S.E. 2d 451 (1983). The sentencing judge *may* consider other aggravating or mitigating factors which are not set forth in the statute that he finds are proved by the preponderance of the evidence, and that are reasonably related to the purposes of sentencing. G.S. § 15A-1340.4(a). That defendant took Ms. Gibson to an emergency clinic does not fall within the enumerated mitigating factors and thus it was within the sound discretion of the trial judge to consider it or not as he chose.

It is significant that defendant put Ms. Gibson in need of medical attention. Indeed, Ms. Gibson might have died had she not received prompt medical attention. The court properly con-

sidered that the defendant's actions were not in mitigation of his crime but merely prevented the charge from being more serious.

We hold the defendant received a fair trial free from prejudicial error.

No error.

Judge ARNOLD concurs.

Judge WELLS concurs in part and dissents in part.

Judge WELLS concurring in part and dissenting in part.

I concur with the majority that there was no error in the trial.

I dissent from the majority on the issue of sentencing. I am persuaded that defendant's actions in rendering aid to his victim required the finding of that mitigating factor. First, the evidence clearly established that defendant rendered aid to his victim. Second, such conduct should be encouraged in the sentencing process and is therefore reasonably related to the purpose of sentencing.

Should it be finally determined that trial courts are not required to find a mitigating factor of rendering aid to a victim by a perpetrator as a non-statutory factor, where the evidence supports such a finding, I would urge legislative consideration of making such circumstances a statutory mitigating factor.