STATE OF NORTH CAROLINA v. BUDDY RAY MATTHEWS

STATE OF NORTH CAROLINA v. ROBERT EUGENE SNOW

No. 108

(Filed 1 February 1980)

**1. Jury §§ 7.6, 7.14— jury accepted by State—challenge of two jurors properly permitted**

The trial court did not err in allowing the State to challenge two jurors after the State had accepted them where one juror told defense counsel that she did not want to sit on the case and that she did not "want this matter on her conscience," and the second juror worked at the same place as one defendant's mother, and the mother spoke to the juror concerning her son during a recess before the jury was impaneled.

**2. Homicide § 20.1— photographs of victim**

The trial court in a second degree murder case did not err in permitting the State to introduce photographs of the victim, and the number of photographs and evidence pertaining thereto were not excessive.

**3. Robbery § 3— amount of money taken—evidence not prejudicial**

In a prosecution for second degree murder and armed robbery of a store employee, the defendant was not prejudiced by testimony that $99.17 was missing from the store, since defendant did not object to or move to strike the testimony, and since other evidence tended to show that money was taken from the store and the exact amount taken was relatively unimportant.

**4. Criminal Law § 66.1— identification of defendant—testimony not inherently incredible**

There was no merit to defendant's contention that the in-court identification testimony of a witness was inherently incredible since the witness, an

employee of a detective agency, passed by the crime scene which was well lighted, saw three men struggling, slowed momentarily, observed the faces of the three men and could positively identify defendant as one of those men.

### 5. Criminal Law § 113.7— aiding and abetting—jury instruction proper

In a prosecution for second degree murder and armed robbery, the trial court did not err in instructing on aiding and abetting where evidence was presented tending to show that defendant was actually present at the time the crimes were committed, and defendant's own evidence showed that he was constructively present.

### 6. Criminal Law § 113.6— two defendants—failure to repeat certain instructions —no error

In a trial of two defendants for second degree murder and armed robbery, the trial court did not err in its jury charge relating to the second defendant in telling the jury that the court would not repeat the elements of the crime of robbery with a dangerous weapon or the definition and elements of second degree murder but the jury would recall the instructions given in the first defendant's case.

### 7. Criminal Law § 119— requests for instructions—similar instructions given— timeliness of request

There was no merit to defendant's contention that the trial court erred in failing to give jury instructions requested by him with respect to the law on aiding and abetting and statements against penal interest, since the court did give instructions on aiding and abetting substantially in accord with defendant's request, and since defendant's request for an instruction on statements against penal interest was not timely.

### 8. Constitutional Law § 30— access to evidence prior to trial—defendant not prejudiced

The trial court did not err in admitting testimony by an expert in the field of analytical chemistry, though defendant was not provided prior to trial with any information regarding the witness's testimony, since the assistant district attorney stated that the witness had filed no reports with him and had not talked with him until about an hour before the witness was called to testify, and since the witness's testimony was in no way prejudicial to defendant.

### 9. Criminal Law § 169— evidence stricken—similar evidence subsequently admitted—defendant not prejudiced

Defendant failed to show that he was prejudiced by the trial court's striking of certain testimony where defense counsel on recross-examination was able to elicit and get before the jury substantially the same testimony that the court had ordered stricken.

APPEAL by defendants from *Mills, J.,* 9 April 1979 Criminal Session GUILFORD Superior Court, Greensboro Division.

Upon pleas of not guilty and on bills of indictment proper in form, defendants were tried for the second-degree murder and the armed robbery of Eugene Green Suddreth. Evidence presented by the state is summarized in pertinent part as follows:

At around 1:00 a.m. on 1 December 1978, Teresa Jones, a detective agency employee, while driving by the Little General Store at 2303 North Church Street in the City of Greensboro, observed three men struggling near the entrance to the store. She identified defendant Snow as one of those men.

A short while later, the body of Eugene Suddreth, the operator of the store, was found in the store's parking lot. He had been dead only a few minutes. Three stab wounds were on his body: two on his chest and one on his back. Immediately after the body was found, police found the store's cash register open; no currency — only a small amount of change — was in the register. Approximately $99.00 was missing.

Shortly after 1:15 a.m. on 1 December 1978, defendants went to the home of Sammie Collie, Sr., defendant Snow's brother-in-law. At that time, defendant Snow had a butcher knife in his hand and gave it to Collie. The blade of the knife was approximately two inches wide and eight inches long. Snow told Collie that he and defendant Matthews had robbed the Little General Store. Matthews proceeded to pull money out of his pockets and place it on a table. Defendants then began arguing with each other. They divided $55.00 between them. Snow told Matthews that "he didn't have to kill the guy". In reply, Matthews stated that "the guy" should not have run out of the store. Matthews further stated that he stabbed the victim once while he was in the store and twice while he was outside; and that he then reentered the store and got the money. Snow told Collie that he was sitting in the car behind the store at the time of the robbery and killing.

Defendant Matthews changed clothes while at the Collie home and left them there. Defendants left the home together. Collie hid the clothes in some woods near his home. The next day, Collie took the clothes and the butcher knife to a park on Charles Street. Later, Collie took defendant Snow to the clothes. Snow removed some money from the pockets and threw the clothes back into the woods.

On 21 December 1978 defendant Matthews told Nathan Alberty that he robbed the Little General Store; that he walked into the place and asked "the man" for money; that the man would not give him the money; and that he then cut the man, took the money and left.

An autopsy was performed on Suddreth's body on the morning of 1 December 1978. Medical evidence tended to show that three stab wounds were found, two in the victim's chest and one in his back; that each of the three wounds had a depth of two to four inches; that one of the wounds penetrated the victim's heart and the others penetrated his lung; that the immediate cause of death was the heart wound; and that death occurred within five minutes after the heart wound was inflicted.

Defendant Matthews offered evidence including his own testimony. He testified that he and defendant Snow were good friends and were together on the night in question; that he (Matthews) had possession of his mother's automobile; that because of an injured foot, he asked Snow to drive; that earlier that night they went to various night spots, drank intoxicants and smoked pot; that eventually they parked near the Little General Store and he went in; that he watched someone else play the pinball machine and then went out of the store; that Snow entered the store and a few minutes later he heard someone yelling; that he then went back to the entrance of the store and saw that man (Suddreth) holding his side; that he grabbed Snow and asked him "what the hell he was doing"; that Snow pointed a knife at him and he returned to the car; that Snow came to the car and they went to the Collie home; that he had nothing to do with the robbery or the killing; that he did not accept any part of the money that Snow took; and that he never told Collie or anyone else that he robbed or hurt Suddreth. He further stated that Snow told him he stabbed Suddreth while inside the store and again on the outside.

Defendant Snow offered evidence including his own testimony. He testified that on the night in question he obtained a butcher knife at Matthews' request; that they then went to the Little General Store and he parked near the store; that he remained in the car and went to sleep; that sometime later Matthews returned and waked him up; that Matthews said he had

robbed the store and he believed he had killed the operator; that Matthews showed him quantities of money; that he drove by the front of the store and saw a man lying in the parking lot; and that they then went to Collie's home.

Other evidence pertinent to the questions presented on appeal will be alluded to in the opinion.

Each defendant was found guilty of second-degree murder and armed robbery. The court entered judgments imposing life sentences on the murder charges and sentences of 40-60 years on the armed robbery charge, the latter sentences to begin at expiration of the life sentences. Defendants appealed and we allowed their motions to bypass the Court of Appeals in the armed robbery cases.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Rebecca R. Bevacqua, for the State.*

*Public Defender Wallace C. Harrelson and Assistant Public Defender A. Wayland Cooke for defendant-appellant Buddy Ray Matthews.*

*Walter E. Clark for defendant-appellant Robert Eugene Snow.*

BRITT, Justice.

We find no merit in any assignment of error brought forward by either defendant.

### DEFENDANT SNOW'S APPEAL

[1] By his first assignment of error defendant Snow contends the trial court erred in allowing the state to challenge two jurors after the state had accepted them. There is no merit in the assignment.

After the state had passed on a panel of jurors, the court allowed the state to use one of its peremptory challenges and excuse Mrs. Loman after she told defense counsel that she did not want to sit on the case, "that she did not want this matter on her conscience". The court also allowed the state to challenge for cause Mrs. Galloway who had been passed by the state before a

noon recess. It was brought to the court's attention after lunch that defendant Snow's mother, who worked at the same place where Mrs. Galloway worked, spoke to Mrs. Galloway about her son during the recess. The jury had not been impaneled at the time Mrs. Loman and Mrs. Galloway were excused.

In *State v. McKenna*, 289 N.C. 668, 224 S.E. 2d 537, *death sentence vacated*, 50 L.Ed. 2d 278 (1976), this court held that neither the case law nor G.S. 9-21(b) "prohibits the trial court, in the exercise of its discretion before the jury is impaneled, from allowing the State to challenge *peremptorily or for cause* a 'prospective juror previously accepted by the State and tendered to the defendant." *Id.* at 680. Although G.S. 9-21(b) has been substantially altered by Article 72 of Chapter 15A, the new statutes do not change the principle laid down in *McKenna. See State v. Matthews*, 295 N.C. 265, 245 S.E. 2d 727 (1978).

[2] By his second assignment of error, defendant Snow contends the court erred in permitting the state to introduce numerous photographs and excessive testimony relating to the victim and his injuries.

"It is settled law in this State that a witness may use a photograph to illustrate his testimony and make it more intelligible to the court and jury; and if a photograph accurately depicts that which it purports to show and is relevant and material, the fact that it is gory or gruesome, or otherwise may tend to arouse prejudice, does not render it inadmissible." *State v. Young*, 291 N.C. 562, 570, 231 S.E. 2d 577 (1977), citing 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 34; *State v. Frazier*, 280 N.C. 181, 185 S.E. 2d 652 (1972); *State v. Doss*, 279 N.C. 413, 183 S.E. 2d 671 (1971); *State v. Atkinson*, 278 N.C. 168, 179 S.E. 2d 410 (1971); *State v. Barrow*, 276 N.C. 381, 172 S.E. 2d 512 (1970).

While defendant recognizes the quoted principle of law, he argues that the number of photographs and other evidence relating to the victim's injuries admitted in this case was excessive; therefore, the rule stated in *State v. Foust*, 258 N.C. 453, 460, 128 S.E. 2d 889, 894 (1963), and restated in *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1969), is applicable.

Considering all of the evidence in this case, we hold that the trial court did not err in admitting the photographs and other evidence complained of.

[3] By his third assignment of error, defendant Snow contends the court erred in denying his motion to strike the testimony of the witness Driver relating to the amount of money that was missing from the store. The record discloses that defendant Snow did not object to, or move to strike, Driver's testimony that $99.17 was missing. That being true, the question which defendant Snow attempts to raise is not presented for review. Rule 10, Rules of Appellate Procedure.

Furthermore, defendant was not prejudiced by the testimony complained of in view of the other evidence, including that of defendants themselves, that money was taken from the store. The exact amount taken was relatively unimportant. "The burden is on defendant not only to show error but also to show that the error complained of affected the result adversely to him . . . ." 4 Strong's N.C. Index 3d, Criminal Law § 167.

[4] There is no merit in defendant Snow's fourth assignment of error wherein he contends the trial court erred in failing to strike the in-court identification testimony of Teresa Jones. Defendant argues that her testimony was inherently incredible, hence the principle followed in *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967), should have been applied to Jones' testimony. We disagree.

In *Miller* the sole identification evidence against the defendant who was charged with breaking and entering was the testimony of one Melton, 16 years old. His testimony showed that he was never closer than 286 feet from the man whom he saw running in the nighttime along the side of the burglarized building; that he saw the man run once in each direction, stop at the front of the building, "peep" around it and look in the witness' direction; and that he did not know the man. This court observed that the witness saw Miller some six hours later in a police lineup "so arranged that the identification of Miller with the man seen earlier would naturally be suggested to the witness". This court held that the evidence did not have sufficient probative force to establish the identity of the defendant.

While the record before us does not disclose the distance from Church Street on which witness Jones was travelling and the entrance to the Little General Store, there is every indication that it was considerably less than 286 feet. Police Officer Rudd testified that he was driving on Church Street at approximately

12:55 a.m., that he observed the Little General Store, and that he recognized Mr. Suddreth who was standing behind the counter inside the store. All the evidence indicated that the store and the area in front of it were well lighted. Mrs. Jones testified that she was employed by a detective agency, that as she passed the store she saw three men struggling, that she slowed momentarily, that she was able to observe the faces of the three men, and that she could positively identify defendant Snow as one of those men.

We hold that the witness' testimony was not inherently incredible and that its weight was a question for the jury. We also point out that there was considerable other testimony, including that of defendant himself, placing defendant at the scene of the crimes.

We find no merit in defendant Snow's sixth assignment of error in which he contends the trial court expressed an opinion on the evidence in violation of G.S. 15A-1222.

Defendant submits that the court, in charging the jury with respect to the evidence of robbery with a dangerous weapon, a butcher knife, said:

". . . the manner in which Robert Eugene Snow used it or threatened to use it, and the size and strength of Robert Eugene Snow as compared to Eugene Suddreth;"

Also, that the court in giving the final mandate to the jury concerning the guilt or innocence of defendant Matthews on the charge of robbery with a dangerous weapon, said, "by aiding and abetting Robert Eugene Snow, as he committed robbery with a dangerous weapon".

Defendant argues that in view of his plea of not guilty, and his testimony that he had nothing to do with the robbery and killing of Suddreth, the court suggested that it was an established fact that he had the butcher knife in his possession at the time of the robbery and that he actually committed the robbery. We disagree.

It is settled that the jury charge of the court must be construed contextually, and segregated portions will not be held prejudicial error when the charge as a whole is free from objection. *State v. Bailey*, 280 N.C. 264, 185 S.E. 2d 683, *cert. denied*, 34

L.Ed. 2d 218 (1972). A reading of the portions of the charge in question preceding and following the portions complained of disclose that the court had carefully instructed the jury on the state's burden of proof; that the state had to prove beyond a reasonable doubt that defendant Snow had a dangerous weapon in his possession. The jury had been made fully aware that if the state had proven beyond a reasonable doubt that defendant in fact did possess the weapon, then the jury would determine by the nature of the weapon and the way it was used whether it was a dangerous weapon. By the time the second statement found objectionable by defendant Snow was made, the court had reiterated several times the state's burden of proving beyond a reasonable doubt each and every element of the crimes charged.

We hold that the court did not express an opinion on the evidence.

There is no merit in defendant Snow's seventh assignment of error in which he contends the trial court erred in instructing the jury on conspiracy. While defendants were not charged with conspiracy, some of the elements of that crime are found in "aiding and abetting" and "acting in concert". The state contended, and its evidence tended to show, that defendants aided and abetted each other and acted in concert in the robbery of Suddreth, hence we perceive no error in the instruction complained of. As the state's brief suggests, the challenged instruction is very similar to one approved by this court in *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *vacated on other grounds*, 33 L.Ed. 2d 761 (1972).

[5] In his eighth assignment of error defendant Snow contends the trial court erred in its instructions on aiding and abetting. He argues that his evidence as well as evidence presented by the state showed that he was not present at the crime scene, therefore, the court should have submitted his guilt or innocence solely on the basis of his being constructively, rather than actually, present. This argument is not persuasive.

In the first place, evidence was presented—that of Teresa Jones and defendant Matthews—tending to show that defendant was actually present at the time the crimes were committed. His own evidence showed that he was constructively present. More importantly, however, is the fact that one who is actually *or* con-

structively present when the crime is committed and aids or abets another in its commission is a principal in the second degree and is equally guilty with one who is a principal in the first degree. *State v. Keller*, 268 N.C. 522, 151 S.E. 2d 56 (1966); *State v. Minton*, 234 N.C. 716, 68 S.E. 2d 844 (1952). *See also State v. Mitchell*, 24 N.C. App. 484, 211 S.E. 2d 645 (1975).

Finally, by his ninth assignment of error defendant contends the court erred in giving the following jury instruction:

"If the State proved beyond a reasonable doubt or it is admitted that the defendant intentionally killed Eugene Suddreth with a deadly weapon or intentionally inflicted a wound upon Eugene Suddreth with a deadly weapon that proximately caused his death, the law implies first, that the stabbing was unlawful, and, second, that it was done with malice; and if nothing else appears the defendant would be guilty of second degree murder."

We disagree with defendant that the quoted instruction is contrary to the principles set forth in *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975), and *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds sub nom.*, 53 L.Ed. 2d 306 (1977). The instruction is very similar to the one this court approved in *State v. Hammonds*, 290 N.C. 1, 224 S.E. 2d 595 (1976). *See also State v. Williams*, 288 N.C. 680, 220 S.E. 2d 558 (1975).

Clearly, the court did not err in failing to charge on voluntary manslaughter as there was no evidence to support such charge. *State v. Griffin*, 280 N.C. 142, 185 S.E. 2d 149 (1971).

\* \* \* \*

### DEFENDANT MATTHEWS' APPEAL

[6] First, defendant Matthews contends the trial court erred in its jury charge relating to him in telling the jury that the court would not repeat the elements of the crime of robbery with a dangerous weapon or the definitions and elements of second-degree murder but the jury would recall the instructions given in defendant Snow's case.

Defendant's reliance on *State v. Forrest*, 262 N.C. 625, 138 S.E. 2d 284 (1964), is misplaced as that case is easily

distinguishable from the case at hand. In *Forrest*, the defendant was tried for driving an automobile while under the influence of intoxicants. No other case was tried with his. In charging the jury on the elements of the offense, the court merely referred to instructions given in other cases and charged the jury to take those instructions into consideration in arriving at their verdict in the case against Forrest. In awarding a new trial, this court held that the charge must be complete within itself and that the defendant and his counsel are entitled to hear the instructions and to have them for review upon appeal.

In the case at hand defendants Matthews and Snow were tried together. After reviewing the evidence, the court gave the jury instructions relating to the charges against defendant Snow, definitions and elements of the offenses and the application of the law to the evidence. The court then told the jury it would not repeat the definitions and elements of the offenses, referred the jury to the definitions and elements given as to defendant Snow, and applied the law to the evidence in defendant Matthews' case.

Clearly, the reason for granting a new trial in *Forrest* does not exist in this case. The jury, defendant and his counsel heard the instructions given and they are before this court for review. The assignment is overruled.

Defendant Matthews contends next that the court erred in instructing the jury on "acting in concert" and "aiding and abetting". He argues that there was no evidence of aiding and abetting. We reject this contention.

In 4 Strong's N.C. Index 3d, Criminal Law § 113.7, we find:

If the defendant is present with another and with a common purpose does some act which forms a part of the offense charged, the trial judge must explain and apply the law of "acting in concert"; if the defendant was actively or constructively present and did no act necessary to constitute the crime but aided and abetted another in the commission thereof, the trial judge must explain and apply the law of "aiding and abetting. . . ."

Under the state's version of the evidence in this case, defendant Matthews was either a principal in the first degree or was acting in concert with defendant Snow in committing the crimes.

Under defendant Matthews' testimony, he was at most an aider and abettor. Therefore, the trial court properly instructed the jury on the principles of acting in concert and aiding and abetting.

[7] Defendant Matthews contends that the trial court erred by not giving jury instructions requested by him with respect to the law on (1) aiding and abetting and (2) statements against penal interests.

Regarding (1), following the close of the evidence, defendant Matthews requested special instructions to the effect that the mere presence of a person at the scene of a crime at the time of its commission does not make him a principal, and that to render one who does not actually participate in the commission of a crime guilty of the offense committed, there must be evidence tending to show that he, by word or deed, gave active encouragement to the perpetrator of the crime, or by his conduct made it known to such perpetrator that he was standing by to lend assistance when and if it should become necessary, citing *State v. Aycoth*, 272 N.C. 48, 157 S.E. 2d 655 (1967); and that even though the jury might find that defendants were friends, the presence of defendant Matthews standing alone would not be sufficient to make him an aider or abettor in the commission of the crimes, citing *State v. Banks*, 242 N.C. 304, 87 S.E. 2d 558 (1955). A review of the charge discloses that the court gave instructions substantially in accord with defendant's request. (R. pp. 264, 266). The law does not require that the charge be given exactly in the words of the tendered request or instructions. *State v. Beach*, 283 N.C. 261, 196 S.E. 2d 214 (1973); *State v. Howard*, 274 N.C. 186, 162 S.E. 2d 495 (1968).

Regarding (2), after the close of the evidence, arguments of counsel and the court's charge to the jury, defendant Matthews requested special instructions on statements against penal interests. The request was refused. He argues that defendant Snow told at least one other person that he (Snow) was the sole perpetrator of the crimes; that this constituted a statement against penal interests and is entitled to be given greater weight by the trier of fact; and that the court should have given his requested instructions on that principle of law.

Assuming, *arguendo*, that defendant's requested instructions were supported by the evidence, they should have been requested immediately after the close of the evidence. G.S. 15A-1231; *State v. Boyd*, 278 N.C. 682, 180 S.E. 2d 794 (1971); *State v. Broome*, 268 N.C. 298, 150 S.E. 2d 416 (1966). Since the instructions were not timely requested, whether they should have been given was in the discretion of the trial judge. *State v. Broome, supra*. We perceive no abuse of discretion.

[8] Defendant Matthews contends the trial court erred in denying his motion to suppress the testimony of state's witness James A. Rayburn. He argues that he filed a motion for disclosure of evidence pursuant to G.S. 15A-903(a)(1), that the state failed to provide him with any information regarding testimony of witness Rayburn, and that his constitutional rights of due process were violated by the admission of the evidence. He further argues that the court should have imposed sanctions as provided by G.S. 15A-910.

Mr. Rayburn was submitted by the state as, and found by the court to be, an expert in the field of analytical chemistry. When defendant Matthews moved to suppress his testimony, the assistant district attorney stated that the witness had filed no reports with the district attorney and that he (the assistant district attorney) had not even talked with the witness until about an hour before the witness was called to testify.

The witness stated that he made an analysis of spots found on a pair of pants previously introduced into evidence and allegedly worn by defendant Matthews at the time of the crimes; and that in his opinion the spots or stains were "dye stuff".

In the first place, we do not think there was a violation of G.S. 15A-903 or G.S. 15A-910. More importantly, we cannot perceive how defendant Matthews was prejudiced by Rayburn's testimony. As we view the record, the state was attempting to show that the pants worn by defendant Matthews on the occasion in question had blood on them following the robbery and killing; and the testimony of Rayburn tended to *disprove* that contention.[1] We hold that the court did not err in admitting Rayburn's

---

1. It is also noted that defendant Matthews admitted that he had blood on his pants following the killing. (R. p. 158)

testimony. It is incumbent on defendant not only to show error but that the error complained of was prejudicial to him. *State v. Paige*, 272 N.C. 417, 158 S.E. 2d 522 (1967).

Defendant Matthews assigns as error the admission into evidence of numerous photographs of the victim and his injuries and testimony relating thereto, contending that the evidence was inflammatory. Defendant Snow raised the same question in his second assignment of error. For the same reasons set forth above in the discussion of defendant Snow's second assignment, we find no merit in defendant Matthews' assignment relating to the same question.

[9] Finally, defendant Matthews contends the trial court erred in striking certain questions propounded by his counsel and answers thereto. This contention relates to the cross-examination of state's witness G. F. Minor, a Greensboro police officer, who testified that he went with Sammie Collie, Sr., to a wooded area and recovered the clothing allegedly worn by defendant Matthews at the time the crimes were committed.

On cross-examination, counsel for defendant Matthews elicited from Minor testimony to the effect that before going to look for the clothing, Minor obtained a search warrant based upon information given to him by Collie; and that he set out in the application for the search warrant that on 2 December 1978 Collie and defendant Snow drove to a deserted area on Henry Street in Greensboro and deposited the blood stained brown trousers, blue shirt and a butcher knife in the wooded area. On redirect examination of Minor, the court allowed the witness to read from the search warrant. Thereupon, counsel for defendant Snow objected and moved to strike all of Minor's testimony relating to the search warrant and the court allowed the motion. The state then moved that the evidence elicited by counsel for defendant Matthews relating to the search warrant be stricken and the court allowed that motion.

On recross-examination by counsel for defendant Matthews, Minor testified:

> I talked with Sammie Earle Collie, Sr. on or about December 28, 1978, and, in addition to other things, he said that he took them out there and then he later saw Robert

Snow, and he and Robert Snow went to that wooded area and located the pants and the shirt, and Mr. Snow took some money out of the pants, and they left them out there in the woods; but Mr. Collie stated originally that he took the pants, knife, and shirt and put them in the woods. Originally he did not say Robert Snow went along.

Defendant Matthews argues that striking the testimony of Minor deprived him of his right of cross-examination to discredit the testimony of the witness Collie by showing inconsistencies therein. This argument is not persuasive in view of the fact that counsel on recross-examination was able to elicit and get before the jury substantially the same testimony that the court had ordered stricken. Again defendant Matthews has failed to show that the alleged error was prejudicial to him. *State v. Paige, supra.*

\*   \*   \*   \*

In the trial of defendants and the judgments appealed from, we find

No error.