STATE OF NORTH CAROLINA v. JESSIE EARL SMITH

No. 8212SC487

(Filed 1 March 1983)

**1. Criminal Law § 75.11— voluntary waiver of rights—supported by evidence**

In a prosecution for second degree murder of defendant's infant daughter where defendant and his wife voluntarily went to a law enforcement center where they talked with a deputy sheriff from 10:46 p.m. until defendant was charged with second degree murder at about 3:00 a.m., the evidence supported the trial court's findings that defendant was properly informed of his constitutional rights, although the investigation had not been clearly focused on him as a suspect at the time the warnings were given, and that he affirmed his understanding and voluntarily waived those rights.

**2. Criminal Law § 34.6— evidence of prior offenses—establishing requisite mental intent—properly admissible**

In a prosecution for the second degree murder of defendant's infant daughter, the trial court did not err in admitting a portion of defendant's confession where he stated that he didn't take his daughter to the hospital right away because he had been in trouble for striking his other child with a hairbrush and "because they think I'm a child abuser" since evidence of previous acts of child abuse tended to show that the injuries were the result of intentional blows and not of an accidental fall.

**3. Homicide § 21.7— second degree murder—sufficiency of evidence**

In a prosecution for the second degree murder of defendant's infant daughter, the trial court did not err in failing to dismiss the charge of second degree murder where the medical testimony indicated that a minimum of three blows were required to make the injuries observed and that such injuries would not have occurred from a fall, and where the medical testimony combined with other evidence, including the inculpatory statements of the defendant and the observations of the police officers, was sufficient to overcome the motion to dismiss.

**4. Criminal Law § 102.6— improper argument to jury—curative attempts of trial court sufficient**

In a prosecution for second degree murder of defendant's infant daughter, the assistant district attorney made an improper remark in his argument to the jury when he stated "if you believe it was an accident, then find him not

guilty and let him go; back to his other children"; however, where defendant's objection to the remark was sustained and defendant's motion to strike was granted, and where the trial court instructed the jury to disregard the last statement of the district attorney, the remark was not so prejudicial in nature as to require a new trial.

**5. Criminal Law § 112.6— instruction—defense of accident—proper**

The trial court did not err in failing to give defense counsel's requested instruction on accident where the trial judge set forth the basic law as to accident including instruction on the burden of proof and applying the law to the facts and where, in substance, the requested instruction was given except for a portion relating to criminal negligence which was not at issue in the case.

APPEAL by defendant from *Brewer, Judge.* Judgment entered 18 December 1981 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 15 November 1982.

Defendant Jessie Earl Smith was indicted for second degree murder of his infant daughter, convicted of that charge and sentenced to imprisonment for not less than eight and a half years nor more than twenty years. Defendant appeals from the judgment and sentence imposed in this case.

*Attorney General Edmisten, by Assistant Attorney General Sarah C. Young, for the State.*

*Assistant Public Defender James R. Parish, for the defendant appellant.*

JOHNSON, Judge.

The State's evidence tended to show that on 8 November 1980 defendant's infant daughter, Jessie Elaine Smith, six and a half weeks old, was brought by defendant and his wife to the Cape Fear Valley Hospital. The baby was barely breathing at the time. The efforts made to resuscitate the baby were unsuccessful, and she died. The baby had bruises on her head, back, and thighs; both eyes were swollen, and she had puncture marks on her body. The defendant told several law enforcement officers that he had been changing Jessie's diaper, left her unattended on a bed, and upon returning found the child on the floor. He picked her up and thought she was all right. Later on the baby showed no reaction, was hardly breathing and defendant took her to the hospital.

Deputy Sheriff Daws testified that defendant and his wife voluntarily went to the Law Enforcement Center where he talked

with defendant from 10:46 p.m. until he was charged with second degree murder at about 3:00 a.m. Defendant was given *Miranda* warnings after being advised that he was not under arrest.

A *voir dire* was held on the admissibility of defendant's statements made to Daws. The court made findings of fact and conclusions of law that defendant's statement was voluntary and denied defendant's motion to suppress.

In his statement to Daws, defendant initially recounted the same version of events he had earlier told law enforcement officers. In addition, he admitted having hit Jessie with an army belt. Later in the interview defendant said that Jessie had not fallen on the floor, but rather he had slapped her in the face with his hand because she had cried all night. After a while defendant noticed she was no longer crying. Defendant tried to get her to take a bottle, pinched and spanked her to try to get some reaction from her. After she opened her eyes and went back to sleep defendant left the room. Four hours later he noticed she wasn't breathing and took her to the hospital. Defendant stated he had not taken her to the hospital sooner because he had been in trouble six months earlier for striking his two year old stepchild with a hairbrush and he was afraid that the doctor thought that he was a child abuser.

The medical examiner testified that there were bruises on Jessie's body and that it was his opinion that the cause of death was three sharp blows to her head from a blunt instrument such as a hand.

At the close of the State's evidence, defendant moved to dismiss the charge of second degree murder. The motion was denied. Defendant presented evidence of his good character in the community. Defendant's renewed motion to dismiss at the close of all the evidence was denied.

I

[1] Defendant first assigns error to the trial court's admitting into evidence defendant's statement given to Detective Daws in violation of his fifth amendment rights as stated in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966).

The prosecution must demonstrate that adequate warnings were given a defendant to secure the privilege against self-

incrimination before using statements resulting from custodial interrogation of that defendant, *Miranda v. Arizona, supra.* The Supreme Court prescribed the following procedural safeguards:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

384 U.S. at 444, 16 L.Ed. 2d at 706-707, 86 S.Ct. at 1612. The Supreme Court also stated that a defendant may effectively waive those rights provided the waiver is done voluntarily, knowingly, and intelligently.

Defendant contends on appeal that although he was advised of both his *Dunaway* rights and his *Miranda* rights, the *Miranda* warnings were diluted and undercut by being given at the very beginning of the investigatory period when the focus was not yet clearly on the defendant.[1] Defendant argues that he was entitled to be given the *Miranda* warnings at the precise point in time when the investigation focused upon him as a suspect. It is defendant's position on appeal that he was lulled by the noncoercive investigatory period and was, therefore, not adequately protected when the police focused on him as a suspect. The implication being that defendant was tricked into feeling safe and this rendered his confession involuntary.

During *voir dire* Detective Daws testified that he requested that Mr. and Mrs. Smith voluntarily accompany him to the Law Enforcement Center, which they did. Upon Mr. Smith's arrival, Daws advised him of his *Dunaway* rights by reading from the preprinted form. The defendant was thus informed that he was not under arrest. Daws read the form to defendant line by line, asked if he understood each statement and upon receiving an affirmative answer from defendant, inserted the word "yes" after each statement. Defendant indicated that he understood the form and signed it.

---

1. Detective Daws testified that *Dunaway* rights are read by the homicide squad to a person who is asked to voluntarily come down to the Law Enforcement Center to explain why they're coming down. Among other things, the person is informed that he is not under arrest. It is clear from the title that the warnings are derived from *Dunaway v. New York,* 442 U.S. 200, 60 L.Ed. 2d 824, 99 S.Ct. 2248 (1979).

Next Detective Daws followed this exact procedure to advise defendant of his constitutional rights to remain silent and consult with a lawyer. Daws read defendant the waiver section of the form and asked if he understood it. Defendant then executed that form. The form contains the following statement of warning:

> You have the right to remain silent and say nothing. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him present with you during questioning.

The procedure followed by Detective Daws adequately informed the defendant of his constitutional rights without undercutting the "spirit and application" of *Miranda v. Arizona, supra,* as defendant contends. The *Miranda* warning given defendant *itself* indicates the possibility of charges and further proceedings by the phrase "anything you say can be used against you in court."

In *State v. Cass,* 55 N.C. App. 291, 285 S.E. 2d 337 (1982) a similar situation was presented. The defendant voluntarily accompanied the police officer to the jail. When they arrived at the jail at approximately 5:45 p.m. the defendant was advised of his *Miranda* rights. At approximately 10:00 p.m. the defendant made an inculpatory statement and he was then formally arrested and served with a warrant shortly after 10:00 p.m. This Court affirmed the trial court's findings that the defendant was properly informed of his constitutional rights and voluntarily waived them, ruling the statement given admissible.

In defendant's case, the trial court found that the required constitutional rights were read to defendant Smith and that he affirmed his understanding and voluntarily waived those rights. These findings are supported by the evidence on *voir dire* and are, therefore, conclusive on appeal. *State v. Small,* 293 N.C. 646, 239 S.E. 2d 429 (1977). It does not appear from the record that the defendant was positively misled by any statements or actions of the police so as to render his waiver of rights and statement involuntary. The prosecution carried its burden of proving the defendant effectively waived his rights and made a voluntary confession.

## II

[2] Defendant next contends that the trial court erred in admitting, over objection, those portions of defendant's statement to Detective Daws which indicate that prior incidents of child abuse may have occurred when defendant hit his other daughter with a hairbrush. In particular, defendant argues his statement that he didn't take Jessie to the hospital right away "because they think I'm a child abuser" was irrelevant, highly prejudicial and should have been ruled inadmissible.

As a general rule, proof that a defendant has committed an independent, unrelated crime is not admissible to prove the defendant's guilt of the crime for which he is being tried. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). This rule applies even when that evidence consists of defendant's confession to the unrelated crime made as part of his confession to the crime for which he is being charged. Therefore, portions of a confession which are irrelevant to the issue of guilt and which tend to prejudice the defendant at trial should not be admitted over objection. *State v. Simpson*, 297 N.C. 399, 255 S.E. 2d 147 (1979).

However, proof of independent crimes is competent to show *quo animo*, intent, design, guilty knowledge or scienter, or to make out the *res gestae. State v. McClain, supra; State v. Lowery*, 286 N.C. 698, 213 S.E. 2d 255 (1975). Thus, where a specific mental intent is an essential element of the crime, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses commission of another offense by the accused. *State v. King*, 301 N.C. 186, 270 S.E. 2d 98 (1980). Also, when the issue is whether an act was done intentionally or by accident, such evidence is also relevant and competent. *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979); *cert. denied*, 448 U.S. 907, 65 L.Ed. 2d 1137, 100 S.Ct. 3050; *reh. denied*, 448 U.S. 918, 65 L.Ed. 2d 1181, 101 S.Ct. 41 (1980).

The victim was a six and a half week old infant who died as a result of injuries to her head which could have been caused by blows from the defendant's hands. Evidence of previous acts of child abuse would tend to show that the injuries were a result of intentional blows and not of an accidental fall.

In addition, this Court has held previous acts of child abuse admissible to show the state of mind necessary to establish malice, an essential element of second degree murder in *State v. Vega*, 40 N.C. App. 326, 253 S.E. 2d 94 (1979). Therefore, the defendant's full statement was relevant and competent as it would tend to show malice and intentional action.

## III

[3] Defendant combines two assignments of error and argues the trial court erred in failing to dismiss the charge of second degree murder; there being no evidence of malice. Defendant bases this argument on the fact that when defendant became aware of the seriousness of the infant's injuries he carried her to the hospital. In addition, defendant's character witnesses testified that defendant was shocked and terribly upset by the death of his daughter.

In considering defendant's argument, which is based on his motion to dismiss, the evidence is to be considered in the light most favorable to the State and the State is to be given the benefit of every reasonable inference that can be drawn therefrom. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977). The State's evidence tended to show that the victim had been struck, resulting in fatal injury to the brain. It was the opinion of the medical expert that a minimum of three blows were required to make the injuries observed. There was also evidence of puncture marks on the child's body which were caused by some sharp or pointed object. The expert testified that such injuries would not have occurred from a fall and that it is very unlikely that an infant of six weeks could actually roll and move off a bed. Defendant admitted to Detective Daws that Jessie never fell out of the bed and that he had slapped her around the face because he was "mad because she had been crying all night."

Second degree murder is the unlawful killing of a human being with malice but without premeditation. *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). The element of malice may be either express or implied. *Id.* Malice may be implied when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life. *State v. Mapp*, 45 N.C. App. 574, 264 S.E. 2d 348 (1980). The *Mapp* case was one of child abuse in which this Court noted that as the

act of abuse is often surreptitious, circumstantial evidence must be relied upon to prove the fact.

> "When the motion for nonsuit calls into question the suffi-
> ciency of circumstantial evidence, the question for the court
> is whether a reasonable inference of defendant's guilt may be
> drawn from the circumstances. If so, it is for the jury to
> decide whether the facts, taken singly or in combination,
> satisfy them beyond a reasonable doubt that the defendant is
> guilty." (Citation omitted) *State v. Cook*, 273 N.C. 377, 383,
> 160 S.E. 2d 49, 53 (1968).

45 N.C. App. at 581, 264 S.E. 2d at 353. In *Mapp*, the very extent and severity of the physical abuse were considered of such magnitude that malice was implied. Similarly, in *State v. Stinson*, 297 N.C. 168, 254 S.E. 2d 23 (1979) the Supreme Court found suffi-cient indication of malice to overcome a motion for nonsuit from evidence showing that the defendant had inflicted a number of in-juries on the body of his two year old son over a period of time.

In the case under discussion the medical testimony combined with other evidence, including the inculpatory statements of the defendant and the observations of the police officers was suffi-cient, when viewed in a light most favorable to the State, to over-come the motion to dismiss the charge of second degree murder.

IV

**[4]** During his jury argument, the Assistant District Attorney made the following remark:

> If you believe she fell off the bed and sustained those in-
> juries, find him not guilty. If you believe it was an accident,
> then find him not guilty and let him go; back to his other
> children.

Defense counsel promptly objected to the remark as im-proper argument. The objection was sustained and defendant's motion to strike was granted. The trial court instructed the jury to disregard the last statement of the District Attorney. Defend-ant's motion for mistrial was denied and defendant assigns error.

> "It is well settled that a motion for mistrial in a noncapital
> case is addressed to the discretion of the trial court, and his rul-
> ing thereon is not reviewable without a showing of gross abuse of

discretion." *State v. Pearce,* 296 N.C. 281, 288, 250 S.E. 2d 640, 646 (1979).

Defendant contends that the curative attempts of the trial court were insufficient to undo the prejudice engendered by the reference to letting the defendant go back to his other children. We do not agree. Although the remark was clearly improper, it was not so prejudicial in nature as to require a new trial. The record shows that an immediate objection was made and sustained and the jury instructed to disregard the statement. Defendant has failed to demonstrate a gross abuse of discretion in denying the motion for mistrial or that substantial and irreparable prejudice against the defendant resulted.

V

[5]    Defendant's final argument relates to the trial court's instruction to the jury regarding the defense of accident. Defendant contends that the instruction actually given was unintelligible and that the trial court erred in failing to give the clearer instruction tendered by the defendant.

The trial court instructed the jury on accident as follows:

If Jesse Elaine Smith died by accident or misadventure, that is, without an unlawful act on the part of the Defendant, then the Defendant would be not guilty.

The burden of proving accident is not on the Defendant. His assertion of accident is merely a denial that he committed any crime. The burden remains on the State to prove the Defendant's guilt beyond a reasonable doubt. Specifically, under the evidence in this case if the State fails to prove beyond a reasonable doubt that Jessie Elaine Smith did not sustain any injuries to her head as a result of a fall off of a bed and that those injuries resulting from a fall off a bed were not the proximate cause of Jessie Elaine Smith's death, if the State fails to prove these things—excuse me—if the State fails to prove beyond a reasonable doubt that these things did not occur, then Jessie Elaine Smith's death would be the result of accident or misadventure and it would be your duty to return a verdict of not guilty.

A jury charge must be construed as a whole and isolated portions will not be held prejudicial when the charge as a whole is correct and represents the law fairly and clearly. *State v. Simpson*, 302 N.C. 613, 276 S.E. 2d 361 (1981). Even if portions are erroneous it must be shown that there were reasonable grounds for the jury to be misled. *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978).

The trial court adequately set forth the law regarding accident and clearly stated that the burden of proving there was no accident remained upon the State. Earlier in the charge, defendant's contention that the death of his daughter resulted from an accident was set forth. The error made regarding what facts the State must prove was immediately corrected. The charge as a whole was fair and could not have misled the jury. While it is true that the defense counsel's requested instruction on accident was more extensive, containing an explanation of criminal negligence, the court is not required to give the exact words of a requested instruction. *State v. Matthews*, 299 N.C. 284, 261 S.E. 2d 872 (1980). There is no error if the trial court gives in substance those requested instructions which were correct in law and supported by evidence. *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976).

The trial judge set forth the basic law as to accident including instruction on the burden of proof and applying the law to the facts. In substance the requested instruction was given except for the portion relating to criminal negligence. Inasmuch as neither the State nor the defendant contended that criminal negligence was at issue, no error resulted from excluding that part of the instruction.

In sum, defendant was accorded a fair trial, free from error.

No error.

Judges ARNOLD and HILL concur.