STATE OF NORTH CAROLINA v. EDWARD VERNON HITCHCOCK

No. 8412SC1068

(Filed 4 June 1985)

1. **Homicide § 15.2; Criminal Law § 34.6— child abuse—evidence of previous abuse**

   In a prosecution for the second-degree murder of a four-year-old girl, the trial court did not err by admitting testimony that the victim had sustained a fractured jawbone while alone with defendant two months before her death. Where the evidence shows that the victim was a battered child who died as a result of injuries which could have been caused by acts of physical abuse administered by defendant, evidence of prior acts of physical abuse is relevant and admissible to show the defendant's intent and to show that defendant acted with malice.

2. **Homicide § 26— child abuse—second-degree murder—instructions using N.C.P.I.-Crim. 206.35 proper**

   In a prosecution for the second-degree murder of a four-year-old child, the trial court did not redefine second-degree murder in its instructions by using N.C.P.I.-Crim. 206.35, which is specifically designed for use in cases where the State seeks to prove second-degree murder based on the theory that a child died as a result of physical abuse by the defendant. The court did not define second-degree murder differently from the way it would have been defined had the victim been an adult when it broke the two elements set forth in N.C.P.I.-Crim. 206.31A into smaller parts because it did not change the elements of the offense or in any way alter the definition.

3. **Homicide § 5— child abuse—malice and criminal negligence distinguished in instructions—no error**

   There was no error in the trial court's definition and distinction of malice and criminal negligence in a prosecution for second-degree murder arising from the death of a four-year-old child.

4. **Criminal Law § 138— child abuse—aggravating factors—position of trust— young victim—no error**

   In a prosecution for second-degree murder arising from the death of a child, the trial court did not err by finding as aggravating factors that the child was very young and that defendant took advantage of a position of trust or confidence to commit the offense where the State relied on evidence showing that the victim suffered from battered child syndrome to obtain the convic-

tion. The two aggravating factors are not elements of second-degree murder and they are each based on separate evidence. G.S. 15A-1340.4(a)(1).

APPEAL by defendant from *Preston, Judge.* Judgment entered 4 June 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 5 April 1985.

Defendant was convicted of the second degree murder of Deborah Teneile Edwards, the four-year-old daughter of his girlfriend with whom he lived, and was sentenced to a term of imprisonment. He appeals.

*Attorney General Edmisten, by Assistant Attorney General Tiare B. Smiley, for the State.*

*Assistant Public Defender Paul F. Herzog for defendant appellant.*

WHICHARD, Judge.

[1] Defendant contends the court committed prejudicial error by allowing the State to introduce evidence concerning an injury received by the victim in July 1983. Evidence was admitted, over defendant's objection, which showed the following:

Approximately two months before her death the victim, Deborah Teneile Edwards, sustained a fractured jawbone while she was at home alone with defendant. Defendant told the child's mother, Deborah Ann Edwards (hereinafter Edwards), that the child had slipped and fallen backwards in the bathtub. The sheriff's department and the department of social services conducted an investigation into the cause of the child's injury but no charges were filed as a result. Defendant later told investigators he believed the child had sustained the injury when she fell at the playground and not when she fell in the bathtub.

Defendant argues that: the evidence concerning the child's prior injury was irrelevant to the offense for which he was being tried; it was not admissible under any of the exceptions to the general rule prohibiting the introduction of evidence showing that the accused has committed another distinct, independent, or separate offense; and its admission was prejudicial in that it tended to raise unwarranted suspicions about him.

The other evidence presented at trial tends to show the following:

Sometime after May 1983 the victim, who had previously been living with her grandmother, came to live with her mother and defendant. Defendant resented the presence of the child and wanted her sent back to her grandmother. Edwards testified that after her daughter came to live with them, defendant became more irritable and was easily upset. Defendant was at home alone with the child from 9:00 a.m. until noon on 6 October 1983. When Edwards left for work at 9:00 a.m. the child was fine, but when she returned at noon the child became ill and vomited. Defendant told Edwards the child had not been sick when she had been with him that morning. Edwards noticed that the child had some bruises on her face. Edwards stayed with the child for the rest of the day because the child continued to feel ill. Defendant went to work.

The next day the child's condition first appeared to improve and then worsened. Defendant was alone with the child for brief periods while Edwards went to the store. That evening Edwards wanted to take the child to a doctor but defendant told her not to because the child had bruises. Defendant told her he thought the child's ribs were broken. The child's condition continued to worsen. Edwards wanted to call someone because the child was sick but defendant would not let her do so and unplugged the phone. He stood in front of the door and would not let her leave to go call anyone. He finally let her call her sister who told her to take the child to the hospital. Edwards testified that defendant told her that if she took the child to the hospital looking like she did that "they was going to try to accuse him of doing it," that they would charge her with the same thing that they would charge him with, and that she should tell the doctor the child fell down the stairs.

Edwards took the child to the hospital but the child was unconscious by the time they arrived and died shortly thereafter. On 8 October 1983 Edwards gave a written statement to the officers investigating the child's death in which she said the child had fallen down a short flight of stairs. Two days later she gave the investigating officers a second statement in which she indicated that she had lied when she said the child had fallen down

some stairs and that she had done so because she did not know what had happened to the child and was trying to protect defendant and herself. She said that in the past she had seen defendant discipline the child by spanking her, kicking her, shaking her, hitting her on the head, and poking her in the chest with his fingers. She said she had always tried to stop defendant but that defendant would either take it out on her or push her out of the way.

On 8 October 1983 defendant gave the investigating officers a written statement in which he stated, in relevant part: When he was alone with the child on the morning of 6 October 1983, the child irritated him by asking numerous questions. After a while he played a game with the child called "supergirl" in which he lay on the floor on his back with his feet in the air and on the child's abdomen and balanced the child so that she could pretend she was flying. The child lost her balance and fell. As she fell her head struck defendant's head, and defendant's knee hit her in the stomach. Shortly thereafter the child became sick and vomited. Defendant yelled at her and pushed her towards the bathroom causing her to run into a door frame. When defendant was alone with the child the next day, the child again indicated she was going to vomit. In trying to hurry the child to the bathroom defendant pushed her twice, causing her to run into a corner of a wall, and kicked her softly soccer-style in the ribs. At one point later that evening the child appeared to stop breathing so defendant slapped her in the face and hit her in the chest until she responded. Other testimony at trial showed that when defendant was arrested he said that "he didn't intend to kill [the child] with malice," "that he blew it," and "that child abuse cases were hard to prove."

The physician who treated the child when she was brought to the hospital on 7 October 1983 testified that when the child was brought in she was covered with bruises. He said that it was his very clear opinion that the child suffered from battered child syndrome and had been beaten quite severely over a period of time and had probably sustained a fatal abdominal injury.

Deborah Radisch, the medical examiner who performed an autopsy on the child, agreed that the child suffered from battered child syndrome. She defined battered child syndrome as the diagnosis used to describe a child on which multiple injuries,

possibly including several different kinds of injuries, are seen which are usually in various stages of healing and located in places where the child would not usually be injured in the course of normal play, and which are unexplained by or inconsistent with the history given by the child's caretaker. Radisch testified that there were large numbers of bruises on the child's body covering virtually every exposed surface and that she believed the child's death had been caused by a blow to her abdomen which injured her intestines and led to peritonitis. She stated that it would have taken a strong force to cause the child's injuries and that the injuries could not have resulted from everyday playing and rough-housing, nor were they consistent with a fall down a short flight of stairs. She further testified that she did not believe the child's injuries, particularly the injury to the child's abdomen, could have been caused by the soft soccer-style kicks defendant said he gave the child or by the child's fall while playing "supergirl" as described by defendant.

As a general rule, evidence which tends to show that a defendant committed another offense, independent of and distinct from the offense for which the defendant is being prosecuted, is inadmissible on the issue of guilt if its only relevancy is to show the character of the defendant or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also tends to show guilt of another crime. *State v. Barfield*, 298 N.C. 306, 325, 259 S.E. 2d 510, 527 (1979), *cert. denied*, 448 U.S. 907, 65 L.Ed. 2d 1137, 100 S.Ct. 3050, *reh. denied*, 448 U.S. 918, 65 L.Ed. 2d 1181, 101 S.Ct. 41 (1980); *State v. McClain*, 240 N.C. 171, 173-77, 81 S.E. 2d 364, 365-68 (1954). It is well settled that such evidence is admissible to show *quo animo*, intent, design, guilty knowledge or scienter, or to make out the *res gestae. State v. Lowery*, 286 N.C. 698, 705, 213 S.E. 2d 255, 260 (1975), *modified*, 428 U.S. 902, 49 L.Ed. 2d 1206, 96 S.Ct. 3203 (1976); *State v. Smith*, 61 N.C. App. 52, 57, 300 S.E. 2d 403, 407 (1983).

Where the evidence shows, as it does here, that the victim was a battered child who died as a result of injuries which could have been caused by acts of physical abuse administered by the defendant, evidence of prior acts of physical abuse is relevant and admissible to show the defendant's intent and to show that the defendant acted with malice. *See State v. Smith*, 61 N.C. App. at

57-58, 300 S.E. 2d at 407; *State v. Vega*, 40 N.C. App. 326, 331-32, 253 S.E. 2d 94, 97-98 (1979), *disc. rev. denied*, 297 N.C. 457, 256 S.E. 2d 809 (1979), *cert. denied*, 444 U.S. 968, 62 L.Ed. 2d 382, 100 S.Ct. 459 (1979). The evidence here concerning the victim's prior injury tended to show that defendant had physically abused the victim on a previous occasion. Thus, it was relevant for the above-mentioned purposes. Accordingly, we find no error in its admission.

[2]  Defendant next contends the court committed prejudicial error in its instructions to the jury concerning the elements of second degree murder and involuntary manslaughter. First, he argues the court denied him equal protection of the law through its instructions on second degree murder in that it redefined the offense based on the fact that the victim was a child. Defendant tendered to the court proposed jury instructions which closely tracked N.C.P.I.-Crim. 206.31A. The court instead instructed the jury by following N.C.P.I.-Crim. 206.35 which is specifically designed for use in cases where the State seeks to prove second degree murder on the theory that the victim, a child, died as a result of physical abuse by the defendant. By instructing in accordance with N.C.P.I.-Crim. 206.35 defendant argues that the court: redefined second degree murder in that it instructed that the offense has five elements which the State must prove, rather than two elements as set forth in N.C.P.I.-Crim. 206.31A; relaxed and broadened the definitions of malice and intent; and instructed that evidence showing that the victim suffered from injuries typical of those found in children suffering from battered child syndrome could be considered in determining whether the injury which caused the victim's death was intentionally inflicted.

We do not agree that the court defined second degree murder differently from the way it would have been defined had the victim been an adult. Although the court enumerated the elements of the offense differently from the way they are enumerated in N.C.P.I.-Crim. 206.31A in that it broke the two elements set forth in that pattern instruction into smaller parts, in so doing the court did not change the elements of the offense or in any way alter its definition. The court's definition and explanation of the elements of intent and malice was in complete accord with our Supreme Court's opinion in *State v. Wilkerson*, 295 N.C. 559, 578-81, 247 S.E. 2d 905, 916-18 (1978). Similarly, the

court's instruction concerning the jury's consideration of the evidence showing that the victim was a battered child was a correct statement of the law. *See State v. Stinson*, 297 N.C. 168, 172, 254 S.E. 2d 23, 25-26 (1979); *see also State v. Mapp*, 45 N.C. App. 574, 580-81, 264 S.E. 2d 348, 353-54 (1980).

[3] Second, defendant contends his due process rights were violated by the instructions on second degree murder and involuntary manslaughter because the court defined malice and criminal negligence so similarly that no rational layperson could make a meaningful distinction between the terms or the offenses. In instructing the jury the court defined and distinguished between malice and criminal negligence as those terms were defined and distinguished by our Supreme Court in *State v. Wilkerson*, 295 N.C. at 578-80, 247 S.E. 2d at 916-17. Thus, the instructions were a correct statement of the law. We find no error and no violation of defendant's constitutional rights in the instructions on second degree murder and involuntary manslaughter.

[4] Defendant contends the court erred in sentencing by finding as aggravating factors that the victim was very young and that defendant took advantage of a position of trust or confidence to commit the offense. He argues that these aggravating factors were improperly found because the evidence necessary to prove them was necessary to prove an element of the offense and because the same evidence was used to prove both factors. *See* G.S. 15A-1340.4(a)(1). His argument is based on the fact that the State relied on evidence showing that the victim suffered from battered child syndrome to obtain the conviction. Since evidence showing that the victim was a child, and thus was very young, and showing that the defendant had a caretaker role, and thus was in a position of trust, was essential to show that the child suffered from battered child syndrome, he argues that the same evidence, i.e., evidence of battered child syndrome, was used to prove both factors. Similarly, since this same evidence was used to prove his intent and that he acted with malice, which are elements of the offense, he argues it should not have been used to prove these aggravating factors.

Defendant's arguments are without merit. The two aggravating factors are not elements of second degree murder, *see State v. Thompson*, 309 N.C. 421, 422 n. 1, 307 S.E. 2d 156, 158 n.

1 (1983), and they are based on separate evidence—evidence of the victim's age and evidence of the caretaker position held by defendant. Thus, the aggravating factors were not found in violation of the prohibition in G.S. 15A-1340.4(a)(1).

We conclude that defendant received a fair trial free of prejudicial error.

No error.

Judges JOHNSON and EAGLES concur.