STATE v. BAYNES

[114 N.C. App. 165 (1994)]

STATE OF NORTH CAROLINA v. AARON DEMETRIUS BAYNES

No. 9318SC162

(Filed 5 April 1994)

1. **Constitutional Law § 309 (NCI4th) — second-degree murder — closing argument — concession of guilt to manslaughter — effectiveness of assistance of counsel**

    A second-degree murder prosecution was remanded for an evidentiary hearing as to whether defendant allowed his attorney to argue that he was guilty of involuntary manslaughter but not murder where defendant was charged with murder and multiple counts of felony child abuse, his attorney contended in closing arguments that he was not guilty of second-degree murder but was guilty of involuntary manslaughter, and it could not be determined from the record whether defendant had given his consent.

    **Am Jur 2d, Criminal Law §§ 752, 985-987.**

2. **Homicide § 417 (NCI4th) — second-degree murder — child abuse — Pattern Jury Instruction**

    Defendant's contention that the Pattern Jury Instruction given to the jury in a second-degree murder prosecution arising from child abuse impermissibly shifted the burden of proof to defendant was overruled.

    **Am Jur 2d, Homicide § 508.**

    Judge COZORT concurring in part and dissenting in part.

Appeal by defendant from judgments entered 30 January 1992 by Judge William H. Freeman in Guilford County Superior Court. Heard in the Court of Appeals 19 October 1993.

The defendant was indicted for one count of murder in connection with the death of Faith Williamson, the daughter of the defendant's live-in girlfriend. He was also charged with six counts of felony child abuse in connection with injuries allegedly inflicted upon Josephine Jones, age nine, John Jones, age ten, Edward Jones, age twelve, Bradley Williamson, age four, Hope Williamson, Faith's twin sister, age two, and Faith, also age two.

STATE v. BAYNES

[114 N.C. App. 165 (1994)]

The defendant's girlfriend, Michelle Williamson, was the mother of Bradley, Faith and Hope. She was the half-sister and primary caretaker of the older children, whose mother and stepfather had been killed in an automobile accident. The defendant and Ms. Williamson also had an infant, Cree. All seven children lived with the couple at their home in Greensboro, North Carolina.

On 1 March 1991, rescue personnel were called to the home of the defendant in response to a report that a child was choking due to food lodged in the mouth. The child, Faith, was taken to Moses Cone Memorial Hospital where she was seen by Dr. Martha Sharpless in the emergency room. At that time the child was in cardiac arrest and moribund. Dr. Sharpless observed that Faith was severely dehydrated and emaciated. She bore both older scars and healing lesions about her body. The doctor also observed cigarette burns on her body and rope burns on her ankles. There was no evidence of choking; her condition looked more like "some very serious, overwhelming, central nervous system catastrophe, like some type of blow to the head." Dr. Sharpless diagnosed Faith as an example of Battered Child Syndrome. The child died approximately thirty hours later.

Trial was held in Guilford County Superior Court on 27 January 1992. The State's evidence included testimony from the doctors who had treated Faith and her sister Hope, Dr. Sharpless, who saw Faith in the emergency room, and Dr. Butts, the medical examiner who performed the autopsy on Faith. Dr. Butts testified that the injuries he found on the child's body were all typical of Battered Child Syndrome, in that they were in such locations and were the type of injuries that would not have occurred by accident. He further testified that the cause of death was a combination of all the injuries,

> the old injuries that had affected her brain, the fresh hemorrhage that was present on the brain, the dehydration that was apparent when she first presented to the Emergency Room, that is she was missing a lot of fluids, that all of these combined, caused her to have an arrest, cardiorespiratory arrest for her heart and lungs to stop working.

The State also presented the testimony of the older children who lived in the home. All of the children described various punishments given to them and their siblings by the defendant. Edward, the eldest child, testified that the defendant had denied

Faith water and food, and that he tied up her hands and legs on a number of occasions. He testified that the defendant made Faith stand in the corner with soiled panties on her head to punish her for wetting herself. As to his own treatment, Edward testified that the defendant would deprive him of food or make him run up and down the stairs for punishment. He also stated that the defendant made him and his little brother maintain a "pushup" position for hours as punishment.

Nicole Jones and John Jones, ages ten and eleven, also offered testimony. Nicole testified that the defendant tied Faith's feet together and hung her upside down in the closet. John testified that he had been punished by restriction to his room for two years. He had also been required to hold a pushup position and run the stairs.

Bradley, the next youngest to the twins at five years, testified that the defendant had thrown Faith in a box on the morning she was taken to the hospital. He testified that Faith knew two words, "stop" and "water." He testified that he had seen the defendant burn Faith with cigarettes. All the children testified to food and water deprivation and other cruel punishments.

The children's testimony was supported by neighbors and family members. Ms. Geneva McIntyre also corroborated the children's testimony at trial. Ms. McIntyre interviewed the children after the defendant's arrest. During those interviews, the children told her of repeated beatings, punishments, and restrictions. They also told her that if they reported the incidents to anyone, they would be punished even more severely.

The defendant pled not guilty to all offenses and offered no evidence. The jury found the defendant guilty of one count of second-degree murder, five counts of felony child abuse, and one count of misdemeanor child abuse. He was sentenced to life in prison for the murder conviction and consecutive terms ranging from three to ten years for the child abuse convictions. The defendant appeals from the jury's verdict and the entry of judgments.

*Attorney General Michael F. Easley, by Assistant Attorney General Ellen B. Scouten, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

ORR, Judge.

The defendant raises two issues on appeal. He argues that his constitutional right to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Article I, §§ 19, 23 and 24 of the North Carolina Constitution has been violated by the statements made to the jury by defense counsel during closing arguments. He further argues that the Pattern Jury Instructions on Battered Child Syndrome unconstitutionally relieved the State of its burden of proving the elements of the crime beyond a reasonable doubt.

I.

[1] The defendant first contends that he was denied effective assistance of counsel when his attorney conceded his guilt of the lesser included offense of involuntary manslaughter in closing arguments. Since we are unable to discern from the record whether the defendant did in fact consent to the statements of his attorney during closing argument to the jury, we remand for an evidentiary hearing to determine whether the defendant allowed his attorney to make the argument at issue here.

The typical test for ineffective assistance of counsel is the same under both the federal and state constitutions. "A defendant is entitled to relief if he can show both (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that his counsel's deficient representation was so serious as to deprive him of a fair trial." *State v. Thomas*, 329 N.C. 423, 439, 407 S.E.2d 141, 151 (1991), *quoting State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985); *see also Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984). However, as the defendant points out, in *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986), the North Carolina Supreme Court held that a violation of a defendant's Sixth Amendment right to counsel was shown where defense counsel, without the defendant's consent, admitted the defendant's guilt, and recommended that jurors convict him of manslaughter rather than murder. "[A]ny concession of a client's guilt absent a consent by defendant to do so constitutes ineffective assistance of counsel *per se*." *State v. McDowell*, 329 N.C. 363, 386, 407 S.E.2d 200, 213 (1991). Only "where a knowing consent has been demonstrated, . . . [should] the issue concerning ineffective assistance of counsel be . . . examined pursuant to the normal ineffectiveness standard

set forth in *Strickland v. Washington.*" *Id.* at 387, 407 S.E.2d at 213 (citations omitted).

In the case at bar, counsel for the defense made the following statements to the jury during his closing argument.

> Now, let me tell you what I think—what I contend he's guilty of. I don't think he's guilty of second degree murder. I think he's guilty of involuntary manslaughter.
>
> . . .
>
> Now, again, you listen to His Honor as he instructs the jury. I think the behavior that Mr. Baynes demonstrated that morning shows criminal negligence, but not the malice that the State has tried to allege here.
>
> . . .
>
> So, I say to you it doesn't have to have the malice—I say to you his behavior at that time was criminally negligent, because it was reckless and it was careless, and it showed a thoughtless disregard of the consequences and the behavior, and a heedless indifference to her.

The trial judge instructed the jury on second-degree murder and involuntary manslaughter.

While the State contends in its brief before this Court that the defendant's statements during sentencing "can only be an admission of guilt . . .", we find that these statements alone are insufficient to infer consent to the defense attorney's argument. Whether defendant gave consent for his attorney to concede his guilt during the guilt determination phase is the dispositive question in the determination of the potential Sixth Amendment violation under *Harbison*. This post-verdict statement standing alone cannot foreclose the issue of consent by the defendant to the attorney's oral argument to the jury during the guilt phase of a trial. In the case *sub judice*, the defendant stated, "Well, I would like to say one thing. I would like to say I'm very sorry to the family of Faith Williamson, and to the children and to the Court. And, I would like to thank the jury for going through their patience of going along with the trial." While these statements may indicate remorse on the part of the defendant, standing alone they do not rise to the level of evidence necessary to show knowing consent as mandated by *McDowell* and *Thomas*.

In both *McDowell* and *Thomas*, clear evidence was presented that tended to show the defendant knowingly consented to the actions of his attorney at the time of closing arguments. In *Thomas*, on remand by the North Carolina Supreme Court, an evidentiary hearing was held on the issue of consent. *State v. Thomas*, 327 N.C. 630, 397 S.E.2d 79 (1990). The trial judge found as a fact that the defendant had consented to the attorney's admission to the murder as a matter of trial strategy in order to hold the State to its burden of proof on a sexual offense charge; there was in fact a writing which recorded the defendant's consent. In *McDowell*, the trial judge questioned the defendant just prior to his attorney's closing argument to ensure that he had specifically authorized the concessions in the argument. The court then further advised the defendant that if at any time the defendant felt that his attorney exceeded the authority he had given, he (the defendant) was to raise his hand and the judge would stop the attorney from further argument, "so we can make sure the only arguments to the jury is [sic] within the authority you granted." *McDowell* at 386, 407 S.E.2d at 213. In the instant case, the record fails to disclose any evidence presented at trial which indicates whether an informed and knowing consent was given by the defendant.

Since here, unlike in *Harbison*, the State has questioned the defendant's assertion that he did not in fact consent to the argument of his attorney and the record is silent on that point, in the exercise of our supervisory powers over the trial divisions, we remand this case to the superior court for an evidentiary hearing to determine whether the defendant knowingly consented to counsel's concessions of the defendant's guilt. *State v. Sanders*, 319 N.C. 399, 354 S.E.2d 724 (1987); *see also* N.C. Gen. Stat. § 7A-32(b). If the defendant did not consent, then a new trial would be mandated, although we note our concern that an unscrupulous lawyer has nothing to lose for his client by failing to obtain prior consent to the attorney making an unauthorized admission of guilt to a lesser offense. If the jury accepts the attorney's argument, the defendant potentially escapes conviction of a more serious charge. If the defendant is convicted of the more serious charge, under *Harbison*, the defendant appears to be guaranteed an automatic new trial by virtue of the ineffective assistance argument based on lack of consent.

## II.

**[2]**   As to the defendant's second assignment of error, we find no merit to his argument that the Pattern Jury Instructions given to the jury impermissibly shifted the burden of proof to the defendant in violation of *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368 (1970). The disputed instruction given to the jury by the trial judge states:

> [I]f you find from the evidence, beyond a reasonable doubt, that at the time when the victim died, she had sustained multiple injuries at different locations on her body, and that those injuries were at different stages of healing. And, if you find that the physical condition of the victim's body was inconsistent with any explanation as to the cause of the victim's injuries, given at or about the time of her death, you may consider such facts, along with all other facts and circumstances in determining whether the injury which caused the victim's death was intentionally inflicted, and not the product of accident or misadventure.

The above instruction, N.C.P.I., Crim. 206.35, was approved by this Court in *State v. Hitchcock*, 75 N.C. App. 65, 330 S.E.2d 240, *disc. review denied*, 314 N.C. 334, 333 S.E.2d 493 (1985). We therefore overrule this assignment of error.

Remanded.

Judge EAGLES concurs.

Judge COZORT concurs in part and dissents in part.

Judge COZORT concurring in part and dissenting in part.

I concur with that portion of the majority which finds no error in the trial court's instructions to the jury. I dissent from that portion which remands for an evidentiary hearing on the issue of whether the defendant consented to his counsel's argument to the jury conceding defendant's guilt to manslaughter. In my view, the defendant's argument should be dismissed because defendant has made no factual assertion that he did not consent.

In *State v. Thomas*, 327 N.C. 630, 397 S.E.2d 79 (1990), the Supreme Court case which sets the precedent for remanding for

an evidentiary hearing, the defendant contended on appeal that he did not consent to his attorney's closing argument. *Id.* at 630, 397 S.E.2d at 80. No such contention appears in this case. Rather, defendant contends that he is entitled to a new trial simply because the record is silent regarding his consent. Appellate courts should not remand for an evidentiary hearing without requiring the defendant to make a factual allegation that he did not consent to his counsel's actions. The majority errs in holding to the contrary.

I also take this opportunity to point out that the decision by the Supreme Court in *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), abandons the traditional test of prejudice in cases alleging ineffective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674 (1984), adopting instead a rule requiring a new trial in every case wherein the defendant's counsel, without defendant's prior consent, concedes defendant's guilt to a lesser offense submitted to the jury. If there is ultimately a factual determination in this case that defendant Baynes did not consent to his counsel's argument to the jury, the *Harbison* rule would be especially harsh to the victims in this case. The evidence of defendant Baynes' torture of these children was overwhelming, corroborated and uncontradicted. This case presents an opportunity for the Supreme Court to reexamine the issue of whether every case involving defendant's lack of consent to counsel's argument conceding some guilt automatically requires a new trial without determining whether defendant was prejudiced by his counsel's concession.

In sum, I vote to dismiss defendant's argument regarding his counsel's argument to the jury, without prejudice to the defendant to raise the issue in a properly filed motion for appropriate relief.